[No. C.D. 7767.   En Banc.   April 7, 1983.]

*In the Matter of the Disciplinary Proceeding
Against* KENNETH B. RICE, *an
Attorney at Law.*

*Robert T. Farrell* and *Caroline D. Davis,* for Bar Association.

*John O. Burgess,* for respondent.

UTTER, J.—A complaint against Kenneth B. Rice was filed by the Washington State Bar Association after a member of his former law firm informed the bar association of certain instances where Rice allegedly appropriated legal

fees for his personal use without accounting for use of those funds to his law firm partners. The hearing panel officer and a majority of the Disciplinary Board recommended a 6–month suspension. We disagree and impose no discipline.

Respondent Rice was admitted to the practice of law in the state of Washington in 1973. He practiced in Everett, as a member of the law firm of Bell, Ingram, Johnson & Level, later reorganized as Bell, Ingram & Rice, a public service corporation (hereinafter "the law firm" or "the firm").

The structure of the disciplinary hearings conducted by the bar association was such that no testimony was taken from any member of the law firm and the only testimony relating to Mr. Rice's separation from the firm, the taking of funds and the firm's accounting practices was that of Mr. Rice. Our characterization of the facts must necessarily rely on only his view of the events. The law firm's position, which may differ greatly from that of respondent, was not presented to the hearing examiner and is not a part of this proceeding.

Rice's testimony was that each attorney in the firm was responsible for his own billings, collections, and write–offs of accounts receivable.

On several occasions beginning in the spring of 1979, respondent Rice took monies paid to him as legal fees for work he had done for his personal use and failed to account to the law firm for the receipt of these funds. In total, eight such instances occurred, involving five different accounts and $2,510. Respondent Rice did not change the books to conceal these takings, but he failed to record the receipt of these funds. A complaint from a client who had been billed twice led to the firm's discovery of Rice's conduct. When confronted by his colleagues, respondent disclosed all instances of withholding funds and promised restitution.

The law firm demanded respondent's termination as a member of the firm. Negotiations to that end were not amicable, in part because respondent refused to agree to any no–competition restrictions. Initially, some firm members wanted respondent to leave Snohomish County and

abstain from practicing in that area for 2 years. They also demanded that respondent turn over to the firm all his active files. Later, the demands were altered to urge Mr. Rice to not practice law within the cities of Marysville and Everett for 18 months. Respondent refused and ultimately an agreement was drawn without any such restrictions.

Soon after this agreement was reached, a member of the law firm informed the bar association of respondent's acts. Based on this information, the bar association filed a formal complaint alleging the eight instances of respondent's appropriation of legal fees for personal use without accounting for receipt of the funds to the law firm. Respondent acknowledged the truth of his takings, but maintained that he intended to account for all the funds at the time a new accounting system was installed.

A hearing was held before a hearing panel officer. In his findings the hearing panel officer admitted that it was difficult to impose discipline in this instance, but concluded that such conduct violated two of the Discipline Rules for Attorneys: DRA 1.1(a) (commission of any act involving moral turpitude, dishonesty or corruption) and DRA 1.1(i) by violating CPR DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). To deter others from such conduct and to maintain the public's respect for the profession, he recommended a 6-month suspension.

A majority of the Disciplinary Board adopted the hearing panel officer's findings, conclusions, and recommendation, with one abstention and one dissent.

This court gives "serious consideration" to the recommendation of the Disciplinary Board, but retains ultimate responsibility for determining the proper measure of discipline in any given case. *In re Krogh*, 85 Wn.2d 462, 473, 536 P.2d 578 (1975).

Several factors persuade us to reach a conclusion differing from the Board. This is not a case involving misappropriation of client funds, therefore the need for discipline is less clear. Because protection of the public and

preservation of the public's confidence in the legal profession are the primary purposes of attorney discipline, the misappropriation of client funds usually warrants a severe sanction. *See In re Kumbera,* 91 Wn.2d 401, 588 P.2d 1167 (1979). These interests are not served, however, in the resolution of internal problems of a law firm. Resolution of a dispute between members of a law firm is usually sought in a civil suit. *See Bovy v. Graham, Cohen & Wampold,* 17 Wn. App. 567, 564 P.2d 1175 (1977). Accounting practices for client funds are strictly regulated by a specific provision in the Code of Professional Responsibility, but no such rule governs accounting procedures for law firm funds. *See* CPR DR 9–102.

Mr. Rice argued that his actions were consistent with the accounting practices of the partnership. As to one partner, his testimony was as follows:

> He simply did not pay any attention to accounts receivable, he would collect what he could and let it go at that. It would depend on what client it was as to whether or not any collection efforts were made.

Transcript of Proceedings, at 153.

In attempting to explain his conduct, Mr. Rice stated:

> In retrospect I wonder why it was done, but in my heart of hearts I had hoped that was the kind of thing that would happen—"Yes, okay, you did it, but you got the money back in place and don't do it again," . . .

Transcript of Proceedings, at 255.

In addition, neither the hearing panel officer nor the Disciplinary Board made a finding that respondent intended to permanently deprive the firm of the funds he used. Respondent's contention that he intended to account for the funds at the time the firm's accounting records were transferred to their own computer is given credence by the fact that he never altered the firm's accounting records to conceal his acts. The dissenting member of the Disciplinary Board expressed his opinion regarding the controlling factors in this case. He concluded:

> I would extend leniency in this matter because of the

very unusual facts and circumstances including the following:

1. The prompt and immediate disclosure of the Respondent upon questioning by his associates leads me to resolve in his favor a doubt over whether Respondent contemplated an ultimate accounting with regard to the funds taken. This doubt should be resolved in his favor. *In re Little,* 40 Wash. 2nd, 421.

. . .

3. A man's past should count for something. With the exception of the acts alleged in the Complaint and freely admitted by the Respondent, Respondent's personal and professional life exemplifies what we want and what we need in the legal profession. This Respondent has acquitted himself with distinction throughout his professional life. He has contributed substantially to the work of his State Bar Association and the American Bar Association. He has been generous and effective in contributions to his community and has apparently been a devoted father and husband. He has served his clients well and has demonstrated honesty in all dealings with clients which dealings sometimes involved very substantial amounts of money. In my view, this past does count for something. I am persuaded that the acts described in the Complaint represent a temporary aberration and not a fundamental character defect. I am therefore persuaded that the interests of protecting the public and preserving confidence in the legal profession can be accomplished without the disruption in this man's career recommended by the majority.

4. I am persuaded that the rehabilitation of this Respondent has been totally accomplished.

Dissent to Findings, Conclusions and Recommendation of the Hearing Officer.

This statement focuses on what we find are the relevant concerns: there is no showing that Mr. Rice demonstrated an intent to permanently deprive the partnership of the disputed funds and, according to the record in this case, his behavior was not out of character with the nature of the firm's accounting procedures.

This court under no circumstances should involve itself in intrapartnership accounting disputes. No charge, trial or

conviction for criminal misconduct has occurred, and Mr. Rice has had no opportunity to dispute, under the appropriate burden of proof, charges of misconduct. No jury has determined, under our accepted judicial procedures, whether or not any of his acts, in fact, violated the law. For the reasons discussed above this court finds no violation of our disciplinary rules.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and ARMSTRONG, J. Pro Tem., concur.

DORE, J., concurs in the result.