713 So.2d 458 (1998)
In re Wade N. KELLY.
No. 98-B-0368.
Supreme Court of Louisiana.
June 5, 1998.
Rehearing Denied July 2, 1998.
*459 Charles B. Plattsmier, Baton Rouge, for Applicant.
Wade Newell Kelly, Lake Charles, J. Michael Small, Alexandria, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This attorney disciplinary proceeding arises from the filing of one count of formal charges by the Office of Disciplinary Counsel ("ODC") against respondent, Wade N. Kelly, an attorney licensed to practice law in the State of Louisiana, for converting funds belonging to his law firm, in violation of Rules 8.4(a) (violation of the Rules of Professional Conduct); 8.4(b) (engaging in criminal acts which adversely reflect on his fitness to practice law); and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

UNDERLYING FACTS
The following findings of fact were made by the hearing committee and are supported by the record:
1. Wade N. Kelly is a licensed Louisiana attorney.
2. As a member of The Carmouche Law Firm, a professional corporation, Mr. Kelly diverted between February, 1990 and August, 1994, approximately $80,000 from the firm for his own use. Essentially, he would ask clients to make checks payable to himself personally and would deposit them in his personal account. The money represented fees for legal services performed by Mr. Kelly for those clients, which money should have been deposited into the law firm account to the benefit of the entire firm rather than Mr. Kelly individually. The money was never "on the books" of the firm. The clients were not asked to pay again. The firm was the sole victim of Mr. Kelly's appropriation.
3. Mr. Kelly did not have a reasonable, good faith belief that he was entitled to any of the money diverted nor does he claim such belief. Mr. Kelly never intended to repay the money. His statements to the contrary were disingenuous.
The record further reveals that upon being confronted about his misconduct, respondent immediately acknowledged his wrongdoing and entered into a contract of restitution. Full restitution was completed in July, 1997.

PROCEDURAL HISTORY
After a complaint was filed, the ODC instituted formal charges alleging violations of the Rules of Professional Conduct. Respondent filed an answer, admitting to the alleged misconduct. In mitigation, he noted his twelve year marriage ended in a bitter divorce and his son underwent treatment for chemical dependency, both at great monetary expense. He stated the combination of his financial and personal problems triggered his pre-existing clinical depression impairing the exercise of his professional judgment.
Thereafter, the hearing committee conducted a formal hearing. Four partners *460 from the law firm testified on behalf of respondent, attesting to his remorsefulness and efforts at restitution. Dr. Robert Woodham, respondent's treating psychiatrist, testified respondent's depression was persistent over a period of time. He claimed, during such times, respondent suffered from a lack of concentration and lapses of judgment impairing his ability to function at work or in a home setting.
After the conclusion of the formal hearing, the hearing committee filed its report with the disciplinary board. The committee found respondent's diversions represented a criminal violation adversely reflecting on his honesty and fitness to practice law in violation of Rule 8.4. The committee recognized several aggravating factors: (1) selfish motive; (2) pattern of misconduct over a period of years; and (3) substantial experience in the practice of law (admitted in 1974). As mitigating factors, the committee recognized: (1) personal and financial problems which contributed to his depression and impaired his behavior;[1] (2) restitution; (3) lack of criminal prosecution; (4) the misappropriation involved his law firm, rather than clients; (5) lack of prior disciplinary record; (6) full and free disclosure to the disciplinary board; and (7) remorsefulness. Based on these factors, the committee recommended respondent be suspended from the practice of law for a period of one year and one day, followed by two years of supervised probation subject to certain conditions.
The respondent filed an objection to the severity of the committee's recommendation. In support, he relied on favorable excerpts from the formal hearing transcript regarding the mitigating factors, as well as the case of Louisiana State Bar Ass'n v. Longenecker, 538 So.2d 156 (1988); modified on reh'g, 538 So.2d 163 (La.1989).[2]
Subsequently, the disciplinary board issued its recommendation to this court. The board agreed the diversion constituted a violation of Rule 8.4(b), conduct adversely reflecting on the lawyer's honesty and fitness to practice law. It rejected respondent's reliance on Longenecker, finding that "respondent's conduct was clearly intentional rather than negligent and not caused by respondent's depression." While the board recognized the baseline sanction for conversion of funds is disbarment, it found there were significant mitigating factors present in this matter which justified a more lenient sanction. Accordingly, the board recommended respondent be suspended from the practice of law for a period of two years and one day, with one year and one day of the suspension deferred, and placed on supervised probation for one year, subject to certain conditions.[3] One board member dissented, stating disbarment was appropriate under the circumstances.
The respondent filed an objection in this court to the disciplinary board's recommended sanction, stating the mitigating factors warrant imposition of a more lenient sanction. The ODC also filed an objection to the recommendation, insofar as the proposed *461 period of actual suspension does not impose an obligation to apply for reinstatement wherein the moral fitness and mental stability of the respondent could be examined.

CONCLUSION
The baseline sanction for conversion is disbarment. Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986). Nonetheless, we recognize there are several mitigating factors in this case, including respondent's mental condition at the time of the conversion, his lack of any prior disciplinary record, his acknowledgment of the wrongful nature of his actions, his cooperation in the disciplinary investigation and his prompt payment of full restitution. Additionally, while we do not minimize the seriousness of respondent's conduct, we note that his actions did not cause harm to any clients, and that several of his law partners (the victims of respondent's misconduct) testified in favor of a more lenient sanction. Considering all these factors, we conclude the appropriate sanction for respondent's misconduct is a three year suspension from the practice of law.[4]

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is the decision of this court that respondent, Wade N. Kelly, be suspended from the practice of law for a period of three years. All costs of this matter are assessed against respondent.
KNOLL, J., dissents with reasons. There are several strong mitigating factors that in my view, render the sanction of 3 years suspension too harsh. A less severe sanction would have accomplished the same goal.
NOTES
[*] Calogero, C.J. not on panel. Rule IV, Part 2, § 3.
[1] While recognizing respondent was seeing his psychiatrist during the period he was embezzling the funds, the committee noted the record was absent of information stating the respondent was unable to differentiate between right and wrong.
[2] In Longenecker, an attorney suffering from an alcohol-induced psychosis converted client funds. This court imposed a period of probation, rather than a suspension, finding the alcoholic condition impaired the attorney's judgment and the attorney had completely rehabilitated himself such that the conduct was unlikely to reoccur. Applying Longenecker to the instant case, respondent contended a more lenient sentence should have been imposed since his depression affected his professional judgment.
[3] As conditions, the board recommended the following:

1. During probation, respondent be supervised by a probation monitor, who is not presently associated nor has been associated in the practice of law with respondent;
2. The probation monitor conduct financial monitoring on a quarterly basis;
3. As a special condition of probation, respondent shall continue to seek psychiatric treatment until such time as he has been discharged by a qualified psychiatrist as no longer suffering from the conditions described in these proceedings;
4. Respondent shall refrain from further violations of the Rules of Professional Conduct; and
5. Respondent shall promptly and immediately pay for all costs of these proceedings.
[4] While we have not squarely addressed the issue of misappropriation of firm funds by an attorney, several other states have addressed this issue and generally imposed suspensions rather than disbarments. See The Florida Bar v. Ward, 599 So.2d 650 (Fla.1992)(attorney received one year suspension rather than disbarment for diverting approximately $12,000 of firm funds to his own use); In the Matter of Disciplinary Proceedings Against Mark X. VanCura, 178 Wis.2d 612, 504 N.W.2d 610 (1993)(attorney suspended from practice for two years for misappropriating firm funds) and North Carolina State Bar v. Nelson, 107 N.C.App. 543, 421 S.E.2d 163 (1992)(attorney suspended for nine months for diversion of firm funds, among other things).