STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. MARK D. FREDERIKSEN, RESPONDENT.

635 N.W. 2d 427

Filed September 21, 2001.   No. S-00-459.

John W. Steele, Assistant Counsel for Discipline, for relator.

Michael L. Smart, of Tiedeman, Lynch, Smart & Kampfe, for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

## NATURE OF CASE

The Nebraska State Bar Association (NSBA) filed formal charges against Mark D. Frederiksen. In an amended answer, Frederiksen admitted all of the allegations contained in the formal charges. We conclude that Frederiksen should be suspended from the practice of law for 3 years.

## SCOPE OF REVIEW

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001).

■ Disciplinary charges against an attorney must be established by clear and convincing evidence. *Id.*

## FACTS

Frederiksen was admitted to the practice of law in the State of Nebraska on September 12, 1983. From October 1985 until May 1998, Frederiksen practiced law with the firm of Zarley, McKee, Thomte, Voorhees & Sease, P.L.C. (Zarley, McKee). Zarley, McKee is based in Des Moines, Iowa, but Zarley, McKee maintains an office in Omaha, Nebraska, where Frederiksen worked. From 1991 until May 1998, Frederiksen was a partner at Zarley, McKee.

Over the course of his final 3 years at Zarley, McKee, Frederiksen reportedly worked long hours and spent much time away from his family. As a result, he became increasingly disenchanted with his compensation. According to the referee, "[i]n order to give himself 'his due' and abate his anger toward his partners," Frederiksen retained for his own use approximately $15,000 in fees that were paid directly to him by Zarley, McKee's clients. Although the partnership agreement required that these funds be paid to the firm, Frederiksen retained the majority of the funds for his own use.

Frederiksen ultimately justified his actions by referring to them as "moonlighting," apparently because some of the work for which he retained funds was done at his home rather than at his office. According to Frederiksen, he misappropriated the funds solely out of anger. He claims no mental disorder, no chemical dependency, no marital discord, and no economic distress. The referee found that Frederiksen was "merely angry at his partners and took the money to appease his discontent."

In May 1998, Frederiksen resigned from Zarley, McKee and joined the Omaha firm of Koley, Jessen, Daubman & Rupiper, P.C. (Koley, Jessen). Frederiksen did not expect to be compensated in any way by Zarley, McKee upon his departure, since he had not "bought into" the firm. However, Zarley, McKee paid Frederiksen "a whole lot of money" after he left. Frederiksen stated that this payment triggered guilty feelings and convinced him that he must discuss his misappropriations with members of Zarley, McKee.

Frederiksen was also admitted to practice law in Iowa. On March 11, 1999, he sent a letter to the Iowa authorities who regulate attorney disciplinary matters, with a copy to Zarley, McKee. The letter stated in part:

> The issue of my moonlighting has arisen as we are completing the terms of my buy-out from the Zarley law firm. While I do not believe that there has been any violation of any ethical obligations, I now disclose these past activities to you, in order to satisfy any duty of disclosure by myself or my former partners which may exist. I am discussing resolution of this matter with my former partners, and it is my anticipation, based on these discussions, that it will be

resolved amicably between us. Because I am licensed to practice in both Iowa and Nebraska, I am sending this letter to the Disciplinary Committees in both states. Please advise if I can answer any questions you may have.

On June 21, 1999, the Iowa Supreme Court Board of Professional Ethics and Conduct issued the following reprimand:

Following a review of the complaint, your response thereto, the Board's investigation, and the file, it was the determination of the Board that upon your departure from a Des Moines law firm to associate with an Omaha, Nebraska law firm, you volunteered information to the Des Moines firm that while a partner in that firm you accepted payment for legal services which you rendered at home or otherwise away from the office, and failed to advise your partners of those services or payments which you retained for yourself. That you accepted payments from clients which were not turned over to your firm nor did you report those payments to the firm. That you did, however, volunteer that information to the firm upon your pending departure and that your differences with the firm have been resolved although you and the firm felt compelled to report this matter to the Iowa Supreme Court Board of Professional Ethics and Conduct.

It was the determination of the Board that you be and hereby are publicly reprimanded that your failure to report these fees received to the partnership and in depositing the same to your personal account, that you engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, contrary to DR 1-102(A)(4) of the Iowa Code of Professional Responsibility for Lawyers.

On March 12, 1999, Dennis L. Thomte, an attorney at Zarley, McKee, filed a complaint against Frederiksen with the NSBA. On September 14, John W. Steele, acting on behalf of the NSBA Counsel for Discipline, filed charges against Frederiksen with the Committee on Inquiry of the Second Disciplinary District (Committee). A hearing to determine whether there were reasonable grounds to believe that Frederiksen was guilty of misconduct which would require the filing of formal charges was requested before the Committee.

At the hearing on November 30, 1999, Frederiksen testified that Zarley, McKee probably would not have discovered his misappropriations had he not brought them to Zarley, McKee's attention. To the contrary, Thomte testified that in the year following Frederiksen's departure from Zarley, McKee, two different clients questioned their account statements because they believed they had paid Frederiksen more money than the amount for which Zarley, McKee had given them credit. Upon investigation, Thomte and his partners determined that they could not account for certain funds the clients claimed they had paid to Frederiksen for Zarley, McKee. Frederiksen was thereafter questioned by Zarley, McKee regarding these discrepancies. At that time, Frederiksen told a Zarley, McKee partner, Michael G. Voorhees, that he had been moonlighting and admitted to the misappropriations. It appears that full restitution for the misappropriated funds was made by Frederiksen.

The Committee submitted to the Disciplinary Review Board a transcript of its hearing together with a copy of its proposed formal charges. Following a review of the transcript, the chairperson of the Disciplinary Review Board concluded that reasonable grounds existed for discipline of Frederiksen.

On May 1, 2000, formal charges were filed against Frederiksen in this court, alleging that he had violated the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

. . . .

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession

of the lawyer and render appropriate accounts to the client regarding them.

On August 14, Frederiksen filed an amended answer in which he admitted all of the allegations contained in the formal charges.

A hearing was held before a referee on September 20, 2000. The transcript from the proceedings before the Committee was admitted upon stipulation. The referee recommended that Frederiksen "be suspended from the practice of law for a period of not less than 60 days nor more than 6 months" and that upon his return to the practice of law, Frederiksen should be placed on probation for a period of 2 years. Frederiksen appealed to this court.

## ASSIGNMENT OF ERROR

In his brief to this court, Frederiksen assigns that the referee erred in recommending a sanction that is excessive under the circumstances of the case.

## ANALYSIS

Frederiksen filed his exception to the referee's report with this court on November 13, 2000, stating that he did not take exception to the findings of fact in the report, but that he took exception to the referee's recommendation that he be suspended from the practice of law for a period of not less than 60 days nor more than 6 months.

Because neither party has filed exceptions to the referee's findings of fact, we consider them final and conclusive pursuant to Neb. Ct. R. of Discipline 10(L) (rev. 2001). When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, this court may, at its discretion, adopt the findings of the referee as final and conclusive. *State ex rel. NSBA v. Mefferd*, 258 Neb. 616, 604 N.W.2d 839 (2000). We therefore adopt the referee's findings and conclude that clear and convincing evidence establishes that Frederiksen violated Canon 1, DR 1-102(A)(1) and (4), and Canon 9, DR 9-102(B)(3).

We next proceed to determine the appropriate sanction. Under Neb. Ct. R. of Discipline 4 (rev. 2001), the court may consider any of the following as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time;

(3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension. See *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000).

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001). For the purpose of determining the proper discipline, we consider Frederiksen's acts both underlying the events of the case and throughout the disciplinary proceeding. See *id.* The determination of an appropriate penalty to be imposed on an attorney also requires consideration of any mitigating factors. *Id.* Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. *Id.*

Frederiksen has admitted his misconduct and acknowledged responsibility for his actions. These actions reflect positively upon his attitude and character and are a factor that we consider in determining the appropriate discipline, bearing in mind that the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice. See *State ex rel. NSBA v. Jensen*, 260 Neb. 803, 619 N.W.2d 840 (2000).

With respect to the factors for determining whether and to what extent discipline should be imposed, we note that the nature of Frederiksen's offense was serious. The conduct occurred over a period of 3 to 4 years and involved approximately $15,000. We also note the importance of imposing a disciplinary sanction that will deter other attorneys from such conduct and will maintain the reputation of the bar.

With respect to the protection of the public, we note that no harm came to the public because of Frederiksen's actions. Although two clients contacted Zarley, McKee to question their bills, thus expending some time to determine whether their

payments had been correctly applied by Zarley, McKee, all of Frederiksen's clients apparently received the legal services for which they had paid.

Finally, we take into consideration Frederiksen's attitude and his fitness to continue in the practice of law. The referee, who observed Frederiksen and heard his testimony, found that Frederiksen is genuinely remorseful and noted that "[h]e is embarrassed by his actions and vows that they will never be repeated."

> Mr. Frederiksen has given his assurance that his dishonesty will be neither repeated nor replicated. He has furthermore presented, through testimony and affidavits, the opinions of many who know him well that he is a man of integrity. He has apparently given tirelessly of himself to the community, his church and the bar association through board memberships, teaching and pro bono work. There is every reason to believe that Mr. Frederiksen is an excellent lawyer.

The referee also found "there is every chance" that Frederiksen will provide excellent legal services and will not repeat his offense. In order to ensure such service, the referee recommended supervision of Frederiksen's activities after he returns to the practice of law.

The Iowa Supreme Court determined that a public reprimand was the appropriate sanction to be levied against Frederiksen. He argues that a similar sanction, such as "censure with probation or supervision by a qualified attorney," is the appropriate discipline here as well. See brief for respondent at 24.

We must evaluate each discipline case individually in light of its particular facts and circumstances while also considering sanctions imposed in prior cases presenting similar circumstances. This is a case of first impression in Nebraska. Courts in other states have imposed a variety of sanctions in cases where an attorney misappropriated fees from his own law firm. The discipline imposed has ranged from no sanction to public reprimand to suspension. As the Washington Supreme Court noted in a case which did not involve misappropriation of client funds, "the need for discipline [in such cases] is less clear." *In re Rice*, 99 Wash. 2d 275, 277, 661 P.2d 591, 593 (1983). In *In re Rice*,

the attorney did not properly record all payments made to him and retained some client funds for his own use. The court stated:

> Because protection of the public and preservation of the public's confidence in the legal profession are the primary purposes of attorney discipline, the misappropriation of client funds usually warrants a severe sanction. . . . These interests are not served, however, in the resolution of internal problems of a law firm. Resolution of a dispute between members of a law firm is usually sought in a civil suit. . . . Accounting practices for client funds are strictly regulated by a specific provision in the Code of Professional Responsibility, but no such rule governs accounting procedures for law firm funds.

*Id.* at 277-78, 661 P.2d at 593.

The Iowa Supreme Court imposed a public reprimand on an attorney who failed to remit court-appointed attorney fees to his law partnership. See *Com. on Pro. Ethics v. McClintock*, 442 N.W.2d 607 (Iowa 1989). Over a 9-year period, the attorney had retained checks totaling $6,990.70, which he agreed belonged to the law partnership. The court stated:

> An attorney cannot resort to self-help to rectify what may be perceived to be an inequity in the division of law partnership earnings. Most law partnerships are founded upon a total trust and confidence among the partners. A breach of this exceedingly close relationship merits disciplinary action. Although McClintock's conduct did not involve an attorney-client relationship, his conduct is governed by the Code of Professional Responsibility.
>
> Although severe sanctions may be justified in cases involving attorneys' conduct with members of their law firms or partnerships, we agree with the commission's recommendation in this case. McClintock has no prior disciplinary record. He reported the violation and fully cooperated with the committee.

*Id.* at 608.

In a Minnesota case, an attorney was placed on 2 years' probation when he, over a 5-year period, retained approximately $6,300 in fees which belonged to his firm's partnership. See *In re Holly*, 417 N.W.2d 263 (Minn. 1987).

A 30-day suspension was ordered for a Florida attorney who engaged in moonlighting by accepting cases without the knowledge or consent of the law firm with which he was associated. See *The Florida Bar v. Cox*, 655 So. 2d 1122 (Fla. 1995). The attorney requested that the clients' payments be made to him, and he kept the payments for his own personal use. He initially denied such conduct, but when evidence was presented, he admitted to having collected the fees. The attorney "continued to engage in unauthorized legal employment even after he was specifically warned against it, and, even more importantly, willfully deceived the firm about his conduct." *Id.* at 1123.

In *Disciplinary Action Against Haugan*, 486 N.W.2d 761 (Minn. 1992), an attorney was found to have misappropriated law firm funds when he agreed to accept a portion of a client's settlement proceeds as payment in full for outstanding attorney fees. The agreement was made without the knowledge or consent of the law firm's shareholders. The attorney deposited into his personal checking account $25,000 in settlement proceeds and attempted to hide the payment by asking the firm to "write off" the client's outstanding attorney fees. The attorney did not disclose his misappropriation until the law firm sued him for allegedly converting law firm property. The Minnesota Supreme Court held that the attorney should be suspended from the practice of law for a period of 30 days.

A 30-day suspension was also entered in a case in which the attorney misappropriated law firm funds and opened client files in his own name in order to keep the files secret from the firm. See *Disciplinary Action Against Bremseth*, 456 N.W.2d 246 (Minn. 1990). The attorney asserted that his conduct was not misappropriation but arose out of "a hostile and bitter financial dispute among the members" of the firm. *Id.* at 247. The 30-day suspension was stayed and ordered dismissed if the attorney abided by disciplinary rules for 1 year.

A 60-day suspension was imposed by the Wisconsin Supreme Court in *Disciplinary Proceedings Against Casey*, 174 Wis. 2d 341, 496 N.W.2d 94 (1993). The attorney, on three separate occasions, appropriated client retainers to his own use rather than giving them to the law firm where he was employed. Two years later, the Wisconsin court suspended an attorney

from the practice of law for 18 months for more severe misconduct, including misappropriating firm funds, manipulating the firm's computer system to conceal his crime, denying any misappropriation when confronted by the firm, refusing to make restitution, and failing to demonstrate remorse. See *Disciplinary Proceedings Against Brunner*, 195 Wis. 2d 89, 535 N.W.2d 438 (1995).

The Florida Supreme Court found a referee's recommended 12-month suspension excessive and imposed a 90-day suspension in a case in which an attorney accepted client funds and deposited less than the full amount of those funds in the firm's accounts. See *The Florida Bar v. Stalnaker*, 485 So. 2d 815 (Fla. 1986). The court found that although the attorney's actions demonstrated "extremely poor judgment . . . his actions [fell] short of a deliberate attempt to steal" from the firm. *Id.* at 817.

An attorney who converted $80,000 of his firm's funds to his own use was placed on suspension for 3 years in a Louisiana case. See *In re Kelly*, 713 So. 2d 458 (La. 1998). The attorney asked clients to make checks payable to him and deposited them in his personal account. However, " '[t]he firm was the sole victim of Mr. Kelly's appropriation.' " *Id.* at 459. Although the court noted that "[t]he baseline sanction for conversion is disbarment," it recognized several mitigating factors, including the attorney's lack of any prior disciplinary record, acknowledgment of the wrongful nature of the actions, cooperation in the disciplinary investigation, and payment of full restitution. *Id.* at 461. The attorney's actions did not harm any clients, and his partners testified in favor of a more lenient sanction.

Although courts have ordered disbarment for activities somewhat similar to Frederiksen's, additional factors weighed in favor of the more severe sanction. In *State ex rel. Oklahoma Bar Ass'n v. Gray*, 948 P.2d 1221 (Okla. 1997), the attorney was disbarred after he misappropriated law firm funds by depositing payments received from clients into a personal account and using the funds for personal expenses. In addition, the attorney borrowed $15,000 from a client and asked the client to keep the loan a secret from the firm. The attorney later defaulted on the note and had not made any arrangement for repayment.

An Iowa attorney's license was revoked based on several ethical violations in *Comm. on Professional Ethics v. Piazza*, 405 N.W.2d 820 (Iowa 1987). There, the attorney recorded several checks on the partnership checking account as payable for court-related expenses when the checks were actually made payable to the attorney. He also recorded the checks for amounts less than the amount for which the checks were actually payable. For example, a $500 check made payable to the attorney was recorded in the checkbook as a $10 check for filing fees. The attorney also wrote a check payable to himself from a reserve account and attempted to conceal the check by executing a check out of numerical sequence. In addition, he failed to deposit a portion of a retainer into the firm's trust account. In another case, he recommended a client seek review in an unemployment matter and accepted a retainer for the review even though the time for filing the review had already expired. In revoking the attorney's license, the court noted that he had failed to respond to the disciplinary complaint and that his license had been suspended on two prior occasions.

The New Jersey Supreme Court disbarred an attorney who retained a portion of a settlement fee for himself and falsified a check request form by indicating it was for reimbursement of expert witness fees, when it was actually a referral payment to another law firm. See *Matter of Greenberg*, 155 N.J. 138, 714 A.2d 243 (1998). The attorney continued to obtain law firm funds for his personal use by submitting false disbursement requests. He deposited some of the checks into the corporate checking account of an entity which he had incorporated, and he forged signatures. The court found that the attorney had created a complex plan to defraud his law firm.

As noted earlier, no other Nebraska cases have dealt with an attorney's misappropriation of funds from a law firm. However, we have held that "disbarment is inappropriate in the absence of specifically delineated injuries" to a client as the result of an attorney's misconduct. See *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 16, 374 N.W.2d 833, 838 (1985). In cases involving misappropriation of a *client's* funds, we have ordered that the attorney be disbarred. See, *State ex rel. NSBA v. Howze*, 260 Neb. 547,

618 N.W.2d 663 (2000); *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997).

We acknowledge that this court has ordered disbarment in two cases where the attorney was found to have misappropriated nonclient funds. In *State ex rel. NSBA v. Rosno*, 245 Neb. 365, 513 N.W.2d 302 (1994), an attorney misappropriated funds from the Lincoln Darts Association while serving as treasurer. We accepted the attorney's surrender of his license to practice law and ordered him disbarred. An attorney who served as the secretary-treasurer of the Madison County Bar Association was disbarred after he withdrew $1,500 from the association's library fund without authorization. See *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 313 N.W.2d 241 (1981). However, neither of these cases concerning nonclient funds related to misappropriation of funds from the attorney's firm.

Before imposing a disciplinary sanction, we must review the mitigating factors present. See *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001). Mitigating factors found by the referee in the present case include:

> [Frederiksen] is, I believe, genuinely sorry for his actions. It appears highly unlikely that he will ever again commit such an act. He is admired by others for his professional competence and his concern for the betterment of his community and the bar. From all outward appearances Mr. Frederiksen is an excellent lawyer and is firmly dedicated to his family, his community, his church and his profession.

Frederiksen is currently practicing law with an Omaha law firm and has practiced there for 3 years with no apparent difficulties. Partners of the firm have expressed support for him and a willingness to have him continue practicing with them. Letters of support were submitted by several attorneys who have worked with Frederiksen on NSBA committees and activities, including continuing legal education. Frederiksen has taught law classes at Creighton University School of Law, and he offered letters of support from its faculty. The NSBA Counsel for Discipline did not request disbarment, and the Iowa Supreme Court, presented with the same facts, entered an order of public reprimand.

## CONCLUSION

We conclude that although this case merits a serious sanction which will serve to inform Frederiksen and other attorneys that such behavior is not condoned, disbarment is not required. No client was harmed as a result of Frederiksen's actions, and there are mitigating circumstances that weigh in his favor. Frederiksen has expressed sincere remorse for his actions and has made full restitution. He is respected by members of the legal profession for his work. The referee found that Frederiksen is dedicated to his family, his community, and his profession. In addition, he has the support of the law firm with which he now practices.

For the reasons set forth herein, Frederiksen is suspended from the practice of law in the State of Nebraska for 3 years, effective immediately.

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.

CONNOLLY, J., dissenting.

Frederiksen filed no exceptions to the referee's findings of fact in this case. Thus, it is undisputed that because he was dissatisfied with his compensation, Frederiksen stole approximately $15,000 from his firm over a period of 3 to 4 years. Although he stated that the firm would not have learned of his actions had he not disclosed them, at least two clients had complained about discrepancies in their accounts. Furthermore, one of the firm's partners testified that he had asked Frederiksen about a discrepancy before his disclosure. Also, at the referee hearing, Frederiksen admitted that he would not have disclosed the misappropriations had the firm not treated him so fairly upon his departure.

The majority opinion acknowledges the serious nature of Frederiksen's conduct but holds that disbarment in this case is not required. This holding is based on the majority's determination that no client was harmed as a result of Frederiksen's actions and that there are mitigating circumstances that weigh in his favor. I dissent.

We have disbarred attorneys for misappropriating nonclient funds. In fact, we specifically rejected an attorney's argument that his misappropriation of funds from a bar association was distinguishable from cases in which attorneys had been disbarred

for converting the funds of clients to their own use, stating that "[t]his court has uniformly imposed the sanction of disbarment in cases of embezzlement or like defalcation by lawyers, and that sanction has not depended upon whether the funds taken were those of a client." *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 100, 313 N.W.2d 241 (1981).

Similarly, we accepted an attorney's voluntary surrender of his license after he misappropriated funds from a nonlegal association for which he served as treasurer. *State ex rel. NSBA v. Rosno*, 245 Neb. 365, 513 N.W.2d 302 (1994). We again stated that "[a]s Rosno was no doubt aware, this court has uniformly imposed the sanction of disbarment in cases of misappropriation, even when the funds did not belong to a client." *Id.*

The majority distinguishes this case from *McConnell* and *Rosno*, stating that "neither of these cases concerning nonclient funds related to misappropriation of funds from the attorney's firm." The implication of the majority's reasoning is that stealing from an attorney's own firm is not as serious as the misappropriation of other types of nonclient funds. I disagree.

There is "no ethical distinction between a lawyer who for personal gain willfully defrauds a client and one who for the same untoward purpose defrauds his or her partners." *Matter of Siegel*, 133 N.J. 162, 167, 627 A.2d 156, 159 (1993). Accord *Attorney Griev. Comm'n v. Nothstein*, 300 Md. 667, 480 A.2d 807 (1984). The majority's holding sends the wrong message to the legal community and is contrary to our stated policy considerations of deterring others and maintaining the reputation of the bar as a whole. See *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001).

Clients often entrust lawyers with large sums of money, and they are entitled to have trustworthy lawyers. A lawyer who steals jeopardizes that trust, regardless of whether the theft is from a client or a firm. Frederiksen was wholly unable to account for the money he misappropriated over 3 to 4 years because he kept no records. While he may have been entitled to a share of the client payments had he remitted them to his firm, he nonetheless repeatedly breached his fiduciary duties to his firm by stealing his partners' shares of the payments. I would hold that in the absence of compelling mitigating factors, misappropriation of

firm funds warrants disbarment. See, e.g., *Kaplan v. State Bar of California*, 52 Cal. 3d 1067, 804 P.2d 720, 278 Cal. Rptr. 95 (1991); *In re Maier*, 664 S.W.2d 1 (Mo. 1984); *Matter of Siegel, supra*; *Matter of Krob*, 123 N.M. 652, 944 P.2d 881 (1997); *In re Allen*, 274 A.D.2d 182, 710 N.Y.S.2d 389 (2000); *Matter of Salinger*, 88 A.D.2d 133, 452 N.Y.S.2d 623 (1982); *In re Murdock*, 328 Or. 18, 968 P.2d 1270 (1998).

It is true that we have held disbarment was inappropriate in a case where the client had not been harmed because of the lawyer's misappropriation of the client's bond receipt. See *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 374 N.W.2d 833 (1985). In *Kelly*, the attorney admitted to securing a forged endorsement for his client's bond receipt and depositing the $1,500 bond proceeds in his office account rather than a trust account. He allowed the balance to drop below the $1,500 amount and refunded the money only after the client had retained another attorney.

But, since *Kelly* was decided, we have held on numerous occasions that "[t]he fact that no client suffered any financial loss does not excuse the misappropriation of client funds and does not provide a reason for imposing a less severe sanction." *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 272, 561 N.W.2d 237, 243 (1997), citing *State ex rel. NSBA v. Gridley*, 249 Neb. 804, 545 N.W.2d 737 (1996), *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996), and *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995). For these reasons, I believe the majority has incorrectly extended the holding in *Kelly* to stand for the proposition that disbarment is an inappropriate sanction for stealing funds from an attorney's own firm. Moreover, I note that at least two clients were forced to make inquiries about discrepancies in their accounts. After an investigation was initiated, other accounts with discrepancies were found. Frederiksen also agreed to pay for any additional misappropriations that the firm discovered in the future because he had not kept records and, therefore, had no way of knowing which accounts would be affected.

The majority notes that Frederiksen claims no mental disorder, no chemical dependency, no marital discord, and no economic distress. Nonetheless, the majority cites as mitigating factors Frederiksen's remorsefulness, his participation in bar association committees and activities, his teaching at the

Creighton University School of Law, and letters of support from Creighton's faculty and other attorneys.

Frederiksen's achievements and reputation as a lawyer, lecturer, and adjunct law professor are commendable, as is his concern for the betterment of his community and the bar. But they should not serve to mitigate thefts from his own law firm. "The egregiousness of respondent's dishonesty should have been readily apparent to so distinguished a practitioner. Although good reputation, prior trustworthy professional conduct, and general good character are often considered as mitigating factors . . . their importance is diminished 'where misappropriation is involved.' " (Citation omitted.) *Matter of Siegel*, 133 N.J. 162, 171, 627 A.2d 156, 161 (1993).

We have held that cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions. *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000). The referee did find that Frederiksen was genuinely remorseful. But given the extended and extensive nature of Frederiksen's thefts, I would hold that the aggravating factors in this case substantially outweigh any mitigating factors in Frederiksen's favor.

Because I believe that *State ex rel. NSBA v. Rosno*, 245 Neb. 365, 513 N.W.2d 302 (1994), and *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 313 N.W.2d 241 (1981), are controlling and that stealing from fellow lawyers is no less a flagrant violation than stealing from a client, I conclude that Frederiksen should be disbarred.

GERRARD, J., joins in this dissent.