STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. GEORGE B. ACHOLA, RESPONDENT.

669 N.W.2d 649

Filed October 3, 2003.    No. S-02-630.

John W. Steele, Assistant Counsel for Discipline, for relator.

D.C. Bradford and Justin D. Eichmann, of Bradford & Coenen, L.L.C., for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

## NATURE OF CASE

The office of the Counsel for Discipline of the Nebraska Supreme Court, the relator, filed formal charges against George B. Achola, alleging that he wrote unauthorized checks on his employer's account in payment of personal expenses. In his answer, Achola admitted to writing the checks. We conclude that Achola should be suspended from the practice of law in the State of Nebraska for 3 years.

## BACKGROUND

Achola was admitted to the practice of law in the State of Nebraska on September 28, 1995. In May 1998, he began working as an associate for the law firm of Walentine, O'Toole, McQuillan & Gordon (Walentine, O'Toole) in Omaha, Nebraska. Walentine, O'Toole had a policy that associates did not have authority to pay for personal expenses with firm funds. Achola was authorized to sign checks on the firm's account with the expectation that such expenditures would be normal business expenditures.

On December 7, 2001, a partner in Walentine, O'Toole discovered that a number of checks had not been properly categorized in the firm's bookkeeping system. An investigation revealed that the checks had been signed by Achola and were unauthorized and improper expenditures. When Achola was confronted by partners in the firm, he admitted he had written the checks to pay for personal obligations. Achola was immediately terminated from Walentine, O'Toole, and the firm subsequently reported his conduct to the relator.

## FORMAL CHARGES

The relator filed formal charges against Achola, alleging that he violated his oath of office as an attorney, see Neb. Rev. Stat. § 7-104 (Reissue 1997), and the following provisions of the Code of Professional Responsibility: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The relator alleged that from February to November 2001, Achola wrote nine unauthorized checks totaling more than $20,000. The relator made specific allegations with regard to two of the checks: On February 13, Achola wrote a $1,625 check against the firm's account for payment of a personal credit card bill. Achola recorded this check in the firm's accounting system as payment of a filing fee on behalf of one of the firm's clients. On July 20, Achola wrote a $6,200 check from the firm's account for payment on a personal loan. Achola recorded this check in the accounting system as the payment of an expert witness fee.

In his answer, Achola admitted that he had written the checks set forth in the formal charges. He also admitted that he had paid for personal expenses with firm funds, but he claimed that some of the checks at issue were authorized by the firm. He acknowledged that he had an obligation to reimburse the firm for any personal expenses, and he alleged that he had repaid the firm for the checks set forth in the charges. He prayed that this court would "impose such discipline as may be warranted in the premises."

## REFEREE'S RECOMMENDATION

The referee found that Achola had violated DR 1-102(A)(1) and (4) and the oath of office as set forth in § 7-104. The referee explained that because Achola admitted to the violations, the sole task remaining was to determine the appropriate sanction.

The referee found that on at least two occasions, Achola fraudulently directed the firm's bookkeeper to prepare checks from the firm's account payable to Achola's creditors. Achola also provided the bookkeeper with inaccurate information as to the purpose or client to be noted on the checks. In addition, the referee found that Achola had written checks on the firm's account to his creditors by removing the checks from the bookkeeper's office, writing the checks, and using them to pay personal expenses. Achola purposely chose not to provide the bookkeeper with a carbon copy of these checks so she would not be able to reconcile the firm's checks. The referee noted that the members of the firm were authorized to take checks from the bookkeeper's office to pay legitimate operating expenses when necessary and that on some occasions, copies of the checks were not returned to the bookkeeper.

Although the referee was concerned with the calculated dishonesty involved in Achola's violations, he found credible Achola's testimony that he intended to repay the money. The referee stated: "This Referee, after observing . . . Achola's demeanor, listening to his testimony, and hearing the testimony of witnesses on his behalf, believes that . . . Achola's intent was to repay the money taken."

With regard to Achola's attitude, the referee stated:

From the moment of discovery of his misconduct, [Achola] has admitted his wrongdoing, made restitution of all monies

taken, and has cooperated fully in all proceedings brought by the Counsel for Discipline and his investigation. In fact, [the relator] in his closing remarks commented on . . . Achola's cooperation.

This Referee was impressed by [Achola's] humility and what I felt was sincere remorse throughout the course of the hearing. He was clearly embarrassed and sorry for what he had done, and he so testified. All things being considered . . . Achola's attitude could not have been better from the date of discovery of his misconduct to the date of the hearing. The testimony on behalf of [Achola] clearly echoed this factor time and again.

The referee found that Achola's full restitution, although made after the discovery of his misconduct, was a significant mitigating factor. He also found that Achola had encountered significant financial difficulties related to obligations to his family. Achola's cultural background is tribal Kenya, and in that culture, the first-born son has considerable responsibility for his elders. Achola's therapist testified that the pressure to help his parents in Kenya was a significant factor in Achola's misconduct. Achola testified that he spent a large amount of money transporting his parents to the United States to attend his wedding. The therapist testified that Achola was too embarrassed by his financial circumstances to ask for help from his friends. The therapist also testified that Achola had taken complete responsibility for his actions.

At Achola's hearing, 68 individuals presented evidence on his behalf, including attorneys, community leaders, and 18 county court and district court judges. The evidence was in the form of live testimony, letters, and affidavits which are part of the record. The referee found that none of the individuals hesitated to recommend that Achola be allowed to continue practicing law. The referee compiled the following list from the comments made about Achola:

"Good role model."
"Outstanding person."
"Hard worker."
"Principled."
"He will learn from his mistakes."
"A wonderful asset to the Bar."

"Very involved in a mentoring program working with children."

"The Bar Association needs competent attorneys of [Achola's] race."

"Hard worker with solid integrity - diligent."

"Very remorseful."

"Very active in charitable work."

"Serves a needed role as an attorney in the community."

"Has the character and integrity to continue being an effective lawyer notwithstanding the charges against him."

"No reservations about his continued ability to practice law notwithstanding these charges against him."

"Independent thinker."

"Would not hesitate to practice with him notwithstanding these charges."

"These charges were out of character."

"Would not hesitate to work with him in the future as a practicing attorney."

"Extremely out of character."

"Never known him to be dishonest."

"Very hard working."

"Embarrassed by his conduct."

"The charges are an aberration."

"It is my strong belief that attorneys should be leaders in civic, charitable and religious matters. [Achola] has excelled in this area."

"A solid and willing contributor to his community. He is far more willing to be involved and give of his own time and energy to projects than most people I know."

"Ashamed by his conduct."

"No reservations about his continued ability to practice law."

"Serves a part of the community that is under-represented."

"He will learn from his mistake, face this adversity and overcome it."

"Credit to the legal profession."

"Isolated incident."

"Conscientious and professional."

"Proud to be his friend and colleague."
"Ethical."
"Trustworthy."
"Honest and sincere."
"A good friend."
"Genuine and sincere."

The referee found that *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001), was helpful in recommending a sanction. He concluded that many of the following factors found by the referee in *Frederiksen* were also present in this case: Achola was genuinely remorseful and embarrassed by his actions, and he vowed that the actions would not be repeated. Achola had provided significant support to his community through board memberships and volunteer work. Achola practiced law effectively after his misconduct was discovered.

The referee also noted factors that distinguished this case from *Frederiksen*. These factors included Achola's intent at the time the acts of misconduct occurred and the financial distress and cultural pressures which motivated the misconduct. The referee believed that Achola was sincere when he stated that he always intended to repay the money, and the referee noted that Achola repeatedly acknowledged the " 'stupidity' " of his actions. The referee commented that he "would be amazed if this conduct were ever repeated by . . . Achola."

After a review of the evidence, the referee concluded that "neither the needs of the Bar nor the public interest would be served by disbarment or a long term suspension of [Achola's] privilege to practice law." It was the referee's opinion that

> [a] three year suspension in this case would be punishment as opposed to whether it is in the public interest to permit an attorney to continue to practice when he is involved in this type of misconduct. . . . Suspension itself sends a message that the Bar considers this type of conduct most inappropriate, but, to remove a young lawyer from his profession for three years is a sanction which comes very close to disbarment.

The referee concluded:

> I believe that a suspension from the practice of law for a period of one year is a severe sanction for a young lawyer,

in the early stages of his career and just starting a family. No client was harmed as a result of his actions and I believe the mitigating circumstances weigh in favor of [Achola].

## ASSIGNMENT OF ERROR
The relator assigns, restated, that the referee erred in recommending a sanction that is too lenient under the circumstances of this case.

## STANDARD OF REVIEW
■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Counsel for Dis. v. Petersen*, 264 Neb. 790, 652 N.W.2d 91 (2002).

■ Disciplinary charges against an attorney must be established by clear and convincing evidence. *Id.*

## ANALYSIS
■ On November 19, 2002, the relator filed an exception to the referee's report, stating that the recommended sanction was too lenient in light of *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001). In a proceeding to discipline an attorney, this court is limited in its review to examining only those items to which the parties have taken exception. *State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002). When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the court may, at its discretion, adopt the findings of the referee as final and conclusive. *State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002). Because neither party has filed exceptions to the referee's findings of fact, we consider them final and conclusive pursuant to Neb. Ct. R. of Discipline 10(L) (rev. 2001). We therefore adopt the referee's findings of fact and conclude that clear and convincing evidence establishes that Achola violated DR 1-102(A)(1) and (4), as well as the oath of office set forth in § 7-104.

■ We next proceed to determine the appropriate sanction. Under Neb. Ct. R. of Discipline 4 (rev. 2001), we may consider any of the following as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension. *State ex rel. NSBA v. Frederiksen, supra.*

■ To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Thompson, supra.* Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. *Id.* For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *Id.*

In *Frederiksen,* we noted that courts in other states have imposed a variety of sanctions, ranging from public reprimand to disbarment, where an attorney misappropriated fees from his law firm.

In Nebraska, we have ordered the attorney disbarred where there was misappropriation of a client's funds. See, *State ex rel. NSBA v. Howze,* 260 Neb. 547, 618 N.W.2d 663 (2000); *State ex rel. NSBA v. Malcom,* 252 Neb. 263, 561 N.W.2d 237 (1997). We have also ordered disbarment where the attorney misappropriated nonclient funds. See, *State ex rel. NSBA v. Rosno,* 245 Neb. 365, 513 N.W.2d 302 (1994) (attorney misappropriated funds from Lincoln Darts Association while serving as treasurer; court accepted surrender of attorney's license and ordered him disbarred); *State ex rel. Nebraska State Bar Assn. v. McConnell,* 210 Neb. 98, 313 N.W.2d 241 (1981) (attorney was disbarred for withdrawing $1,500 from Madison County Bar Association's library fund without authorization).

■ This court has not, however, adopted a "bright line rule" that misappropriation of funds will always result in disbarment.

The determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. *State ex rel. Counsel for Dis. v. Thompson,* 264 Neb. 831, 652 N.W.2d 593 (2002). Were we to impose a bright-line rule concerning misappropriation of funds, there would be no need to consider mitigating factors.

Because the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to continue practicing law, we consider the underlying factors and the attorney's actions throughout the proceeding. See *id.*

In determining the appropriate sanction, we first note the serious nature of Achola's misconduct. He misappropriated approximately $20,000 from his law firm. On at least two occasions, he directed the firm's bookkeeper to prepare checks payable to his personal creditors and provided the bookkeeper with inaccurate information as to the purpose or client to be noted on the checks.

Misappropriation of funds by an attorney, whether from a client or from one's own law firm, violates basic notions of honesty and endangers public confidence in the legal profession. See *State ex rel. NSBA v. Veith,* 238 Neb. 239, 470 N.W.2d 549 (1991). We do not view the misappropriation of funds from one's own firm as any less dishonest and deceptive than the misappropriation of client funds.

With respect to Achola's attitude, the referee, who observed Achola and heard his testimony, made favorable comments, which have been set forth above. The referee found that none of the individuals who presented evidence on Achola's behalf hesitated to recommend that he be allowed to continue practicing law. The referee further found that the affidavits from judges, as well as the testimony and letters on Achola's behalf, demonstrated that he is a capable attorney. The referee also noted that Achola had practiced law effectively following the discovery of his misconduct.

The propriety of a disciplinary sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. *State ex rel. NSBA v. Gallner,* 263 Neb. 135, 638 N.W.2d 819 (2002). The only Nebraska attorney discipline case involving an attorney who

misappropriated funds from his own law firm is *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001).

Frederiksen practiced law for a firm in Des Moines, Iowa, and over the course of 3 years, he became dissatisfied with his compensation. According to the referee, " '[i]n order to give himself "his due" and abate his anger toward his partners,' " Frederiksen retained for his own use approximately $15,000 in fees that were paid directly to him by the firm's clients. See *id*. at 564, 635 N.W.2d at 430. Frederiksen later attempted to justify his actions as " 'moonlighting.' " See *id*. According to Frederiksen, he misappropriated the money solely out of anger, and he claimed no mental disorder, chemical dependency, marital discord, or economic distress.

Frederiksen subsequently resigned from the Iowa firm and joined an Omaha firm in May 1998. Upon his departure, the Iowa firm paid Frederiksen a significant amount of money, and it was this payment that triggered guilty feelings and convinced Frederiksen to discuss the misappropriations with members of the Iowa firm. Frederiksen reported his misconduct to the Iowa authorities who regulate attorney disciplinary matters, and the Iowa Supreme Court Board of Professional Ethics and Conduct issued a public reprimand. An attorney at the Iowa firm filed a complaint against Frederiksen with the Nebraska State Bar Association.

Formal charges were filed against Frederiksen in this court, and a hearing was held before a referee. The referee recommended that Frederiksen be suspended from the practice of law for 60 days to 6 months and that upon his return to the practice of law, he be placed on probation for 2 years. Frederiksen took exception to the referee's recommended suspension and appealed to this court.

After examining an assortment of sanctions imposed in other states for similar offenses, we determined that although Frederiksen's actions merited a serious sanction, disbarment was not required. We concluded that no client was harmed as a result of his actions and that there were mitigating circumstances. We noted that Frederiksen had expressed sincere remorse and had made full restitution. We also noted that he was respected by members of the legal profession for his work and was dedicated

to his family, his community, and his profession. We ordered that Frederiksen be suspended from the practice of law in the State of Nebraska for 3 years.

The referee in the case before us found two factors which distinguish Achola's case from *Frederiksen* and, in the referee's opinion, warrant a lesser sanction. First, Achola's misconduct was prompted by significant financial difficulties related to an obligation to his family, whereas Frederiksen acted solely out of anger. Second, Achola always intended to repay the money he took from the firm. Frederiksen, however, showed no intention of returning the money he misappropriated, and in fact, Frederiksen felt he was entitled to it.

The referee also noted several mitigating factors: Achola's financial difficulties were related to an obligation to his family. Achola took complete responsibility for his misconduct, and he cooperated fully in all proceedings brought by the relator. The referee found that Achola's attitude "could not have been better from the date of discovery of his misconduct to the date of the hearing." Achola was genuinely remorseful and embarrassed by his actions, and he vowed that they would not be repeated. Achola offered evidence from a number of individuals in the community, including attorneys and judges, who supported his continued law practice. Achola has provided significant support to his community and has practiced law effectively since the discovery of his misconduct. We find that although these mitigating factors do not excuse Achola's misconduct, they weigh in his favor in considering the sanction to be imposed.

## CONCLUSION

This court does not condone Achola's conduct, as evidenced by the sanction imposed. However, sufficient mitigating factors support the decision not to disbar Achola. For the reasons stated above, Achola is suspended from the practice of law in the State of Nebraska for a period of 3 years, effective immediately.

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.

CONNOLLY, J., dissenting.

For the reasons I set out in my dissent in *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001), I dissent.

The majority notes that no client was harmed and that there were mitigating factors. But as I stated in *Frederiksen*, stealing from fellow lawyers is no less a flagrant violation than stealing from a client. See, *State ex rel. NSBA v. Rosno*, 245 Neb. 365, 513 N.W.2d 302 (1994); *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 313 N.W.2d 241 (1981). Although I agree with some of the mitigating factors discussed by the majority, I do not view remorse or intent to repay the money as persuasive when these factors took place after the theft was discovered. Under the circumstances in this case, I conclude that Achola should be disbarred.

GERRARD, J., joins in this dissent.