ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
| T This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Walter Brent Pearson, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
At all times relevant to this proceeding, respondent was a partner in the Alexandria law firm of Crowell and Owens (hereinafter referred to as “the firm”) and was solely responsible for handling the firm’s financial matters. The firm managed its payroll expenses by transferring funds to WB Management, Inc. (“WB”), a company the firm established at respondent’s suggestion and specifically for this purpose. Eventually, the firm’s accountants learned that respondent had caused excess funds from the firm to be distributed to the WB account, which funds he then converted to his own use. In January 2010, the firm discovered some eighteen unauthorized withdrawals from WB totaling $133,489.75, all payable directly to respondent or to persons or companies affiliated with or controlled by respondent.
Respondent acknowledged that he misappropriated the funds and resigned from the firm in February 2010. However, pri- or to his departure, he distributed $29,000 of the firm’s funds to himself without the knowledge, consent, or |2permission of the other partners.[1] Thereafter, his former partners learned that respondent had also used a firm credit card to pay for personal expenses. Some of the credit card bills were paid by respondent using the firm’s funds while others were paid by respondent using funds in the WB account. However, in every instance, respondent made the payments without the knowledge, consent, or permission of the firm’s partners.
DISCIPLINARY PROCEEDINGS
Both respondent and the firm reported his conversion of funds to the ODC. In September 2010, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trust *315 worthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Respondent answered the formal charges and admitted that he made unauthorized withdrawals from WB, which he indicated was wholly owned by William B. Owens (another partner in the firm) and himself. He also indicated that he had reimbursed some of the funds and was in the process of re-paying the full amount of unauthorized withdrawals.[2] However, respondent denied taking any unauthorized distributions from the firm, and he denied engaging in any misconduct with respect to the charges he made using the firm’s credit card.
IsThis matter proceeded to a formal hearing on the merits, conducted by the hearing committee in May 2011. The ODC introduced documentary evidence at the hearing and called two witnesses to testify before the committee. Respondent also introduced documentary evidence and called several witnesses, including character witnesses, to testify before the committee. Finally, respondent testified on his own behalf and on cross-examination by the ODC.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings, including the following:
1. Respondent was admitted to the practice of law in 1985 and is also a CPA. He assisted his father, a successful pharmacist who invented a pill counting machine that is widely acclaimed in the industry, as a CPA and an attorney, both in several businesses and with the acquisition and sale of drug stores. Respondent also worked for the firm, whose legal work consisted primarily of tax and transactional matters.
2. Respondent testified that Mr. Owens was like a father to him and that the law partnership was successful.
8. WB is a company created by the firm in which funds were deposited from the firm to meet payroll expenses, distribute money to the partners, and pay health insurance premiums. This arrangement started in the early 1990’s.
4. Respondent was entrusted with the responsibility of transferring funds to and paying the appropriate expenses from the WB account.
5. Respondent started a company with his father called Pearson Medical Technologies.[3] This company was not profitable in and around 2007 and l4needed an influx of cash to continue its operations. Respondent admitted that he was having a hard time finding the necessary capital to make Pearson Medical Technologies successful and competitive.
6. Respondent acknowledged making eighteen separate unauthorized withdrawals of funds from WB for his own personal use. He indicated that he needed the funds to assist Pearson Medical Technologies. *316 Undisputed evidence showed that respondent made ten withdrawals totaling $75,200 from WB over a period of 13 months (between November 19, 2007 and December 24, 2008).
7. In January 2009, respondent made two repayments to WB totaling $25,000, followed by a repayment of $10,000 at the beginning of February 2009. Within nineteen days of his last repayment, respondent made the first of eight more unauthorized withdrawals from WB. Total unauthorized withdrawals were approximately $133,489.75 over a period of 25 months. Voluntary repayments at the time the misconduct surfaced totaled $35,000.
8. Respondent was confronted by his partners regarding a discrepancy found in the firm’s records during a year-end review. Mr. Owens informed respondent that the firm was obligated to report the conversion of funds to the ODC and recommended that respondent also self-report his conduct to the ODC. On February 22, 2010, respondent self-reported his conduct to the ODC. At that time, he had made $61,000 in restitution to the firm.
9. Respondent left the firm, and litigation ensued with regard to a division of assets, allocation of expenses, and the usual financial discernment process that is necessary when business partnerships are concluded.
10.The parties stipulated that all litigation between respondent and his former partners was settled prior to the committee taking testimony. The terms of the compromise are confidential; however, counsel for the respective parties | ¿did report that no money or funds are due and owing to either party and that restitution is not an issue.
11. Respondent admitted that on several different occasions, he converted money from the WB account for his personal use. He testified that he intended to pay the firm back, and that is evidenced by his several repayments.
12. Respondent admitted that his conduct was dishonest, that the money was not properly allocated, and that he knew the conduct was wrong. He apologized to his partners. He also acknowledged that his judgment in the matter was blinded, and he was embarrassed for the shame that he brought upon his family. He expressed great remorse for the terrible decision he made.
13. Upon repayment of the $61,000, respondent felt he had repaid all the money the firm was entitled to and that there would be a “due accounting” among the partners when he separated from the firm. He testified that he was surprised to learn the firm would be taking a hard line in the matter, which resulted in litigation and an ultimate compromise with his former partners.
14. While the firm and the ODC contend that respondent improperly used the firm’s credit card, the submitted evidence and testimony did not definitively support this claim. Respondent did have a credit card that was billed to the firm for expenses, but it was established that the possession of a firm-issued credit card was consistent for all firm partners and associates.
*317 15. Respondent’s use of the credit card did not constitute wrongdoing or improper conduct on his part. The various documents and testimony introduced by the ODC primarily reflect a civil dispute in the breakup of a law firm/partnership with the parties taking sides on allocation of expenses, assets, income, and charge backs.
|fi16. By respondent’s own admission, the ODC has established by clear and convincing evidence that he made unauthorized distributions and otherwise converted funds from his former law partners without their consent or knowledge in violation of the Rules of Professional Conduct.
17. There were no client funds or resources implicated in any of the charges brought before the committee. All funds converted and improper allocations were solely between respondent and his former law partners. The firm’s clients and the public interest were never at risk or directly harmed by respondent’s activities.
18. Respondent has no prior disciplinary history and has enjoyed a solid reputation in the community.
19. Respondent testified that Pearson Medical Technologies is a stronger company today and does not appear to be in the financial straits that it was in during the years when the improper conduct occurred.
Based on these facts, the committee determined the ODC met its burden of proving that respondent violated Rule 8.4 with respect to all of the alleged misconduct except the improper credit card use. Although the committee determined that the baseline sanction for respondent’s misconduct is disbarment, it noted the record contains substantial evidence in mitigation. The mitigating factors include the fact that respondent self-reported his conduct to the ODC and the fact that he has had a highly successful practice and is regarded as a valuable member of the community. Additionally, the committee “deems it important that no client funds or property were implicated in the conversion, that the public was not at risk due to [respondent’s] behavior, that no restitution is owed, that all financial disputes between [respondent] and his former law partners have been confidentially compromised, and all litigation dismissed with prejudice.”
|7Although the committee acknowledged that conversion of funds is a serious infraction, under the circumstances, it recommended respondent be suspended from the practice of law for three years.
Both respondent and the ODC objected to the hearing committee’s report and recommendation.

Disciplinary Board, Recommendation

After review, the disciplinary board adopted the hearing committee’s factual findings, except the finding regarding respondent’s use of the firm’s credit card. The board also adopted the committee’s legal conclusions regarding respondent’s conversion of the firm’s funds but rejected the committee’s conclusion that respondent did not engage in misconduct with respect to the firm’s credit card. Specifically, the board determined that respondent used the firm’s credit card for unauthorized personal expenses and improperly allocated many of those expenses to the firm as business related. Respondent made unilateral decisions about which of his personal expenses would be allocated to him and which would be allocated to the firm as “compensatory.” In the board’s view, the issue is not whether respondent was entitled to use the firm’s credit card for strictly personal expenses or whether he was *318 justified in allocating some of his expenses to the firm. Rather, the issue is that he did so without the knowledge or consent of his partners and then engaged in conduct involving dishonesty, deceit, and misrepresentation by allocating a number of his personal expenses to the firm as business related in order to compensate himself as he saw fit. Based on these findings, the board determined that respondent violated Rules 8.4(b) and 8.4(c) with respect to his misappropriation of the firm’s funds and also with respect to his use of the firm’s credit card.
|sThe board determined that respondent knowingly violated duties owed to the legal system and the legal profession. While there was no risk of harm to any client or the public, respondent’s misconduct caused actual harm to his law partners. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
In aggravation, the board found the following factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1985). The board found the following mitigating factors are present: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse.
After further considering this court’s prior jurisprudence addressing similar misconduct, the board determined that the mitigating factors present are insufficient to warrant a downward deviation from the baseline sanction. Therefore, the board recommended that respondent be disbarred.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this matter supports the hearing committee’s factual findings as modified by the disciplinary board. Essentially, respondent admitted that over a two-year period, he intentionally converted more than $133,000 in funds belonging to his law firm in order to pay expenses relating to his personal business venture. He also took unauthorized distributions from the firm and used the firm’s credit card for personal expenses, which he then allocated to the firm without the knowledge or consent of the other partners. Based on these facts, respondent has violated the Rules of Professional Conduct as charged.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, *319 and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent intentionally violated duties owed to the legal profession. His misconduct caused actual harm to the firm and its partners. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors found by the board.
Considering the record before us, we reject any suggestion by respondent that his intentional misconduct warrants a sanction less than disbarment. In prior cases, we have disbarred lawyers who intentionally converted funds belonging to their law firms. See In re: Sharp, 09-0207 (La.6/26/09), 16 So.3d 343, and In re: Bernstein, 07-1049 (La.10/16/07), 966 So.2d 537. Notably, the monetary sums at issue in Sharp and Bernstein were considerably smaller than in the instant matter. Furthermore, the significant mitigating factors present in In re: Kelly, 98-0368 (La.6/5/98), 713 So.2d 458, which prompted us to impose a three-year suspension upon a lawyer who converted law firm funds to his own use, are not seen in this case, most notably the clinical depression from which Mr. Kelly suffered at the time of the misconduct. Here, respondent suffers from no mental impairment and there was no finding of such by either the hearing committee or the disciplinary board. When considered against the backdrop of the proven misconduct, the weight of the mitigating circumstances in this case is simply insufficient to warrant a downward deviation from the baseline sanction.
Accordingly, we will accept the disciplinary board’s recommendation and disbar respondent.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Walter Brent Pearson, Louisiana Bar Roll number 17088, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys, and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Pursuant to the firm's operating agreement, the distribution of the firm’s profits was supposed to occur only after the partners voted on the proposed distributions which had been calculated by respondent.

. The firm eventually filed a lawsuit against respondent, which was settled prior to the formal hearing in this matter. According to all parties to the lawsuit, respondent has repaid the firm all funds as agreed to in the settlement.

. Respondent testified that the company makes equipment to handle bar coding and inventory control for hospitals.