WEIMER, J.,
concurring in part and dissenting in part.
hi concur with and subscribe to the majority’s opinion in all aspects except the sanction. Previously, this court held “the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession.” In re Torry, 10-0837, p. 7 (La.10/19/10), 48 So.3d 1038, 1042, citing Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
In the instant case, I find permanent disbarment is unnecessarily punitive and inconsistent with this court’s previous sanctions for similar misconduct. For example, in In re Bernstein, 07-1049 (La.10/16/07), 966 So.2d 537, this court imposed not permanent disbarment, but disbarment for a lawyer who misappropriated approximately $50,000 over a period of 15 years from two separate law firms that employed him. Knowing that the firms would submit bills for his services, Attorney Bernstein nevertheless directly sent clients bills on his letterhead for the same services. Id., 07-1049 at 2-3, 966 So.2d at 539-40.
In disbarring Attorney Bernstein, this court explained his “actions demonstrate a fundamental lack of honesty which falls far below the standards expected of attorneys admitted to the bar of this state.” Id., 07-1049 at 11, 966 So.2d at 544. The same can be said of Attorney Mitchell’s actions, which are very similar to Attorney [2Bernstein’s actions, in that Attorney Mitchell submitted expense claims to his firm knowing those claims would ultimately be paid by a client, but also knowing he was not entitled to the money.
Similarly, in other instances in which a lawyer misused the structure of a law firm to obtain funds to which the lawyer was not entitled, this court imposed not permanent disbarment, but disbarment. See In re Pearson, 12-0940, pp. 9-10 (La.10/16/12), 100 So.3d 313, 318-19 (lawyer converted $133,000 belonging to his law firm and improperly used the firm’s credit card for personal expenses; disbarment imposed); see also In re Sharp, 09-0207, pp. 12-14 (La.6/26/09), 16 So.3d 343, 350-51 (imposing disbarment for a law *320 yer’s conversion of $50,000 in attorney’s fees and expenses due to his law firm upon settlement of a personal injury matter).
One difference between disbarment and permanent disbarment is that for permanent disbarment, this court essentially determines in advance that a lawyer’s character and fitness can never later be sufficiently rehabilitated. For regular disbarment, after a period of five years, if the disbarred lawyer has demonstrated the “requisite honesty and integrity to practice law” through a rigorous examination in which the ODC is allowed to dispute the disbarred lawyer’s evidence, this court’s rules provide the possibility of granting readmission. See Sup.Ct. Rule XIX, § 24(A), (E), and (F).
There are instances where the misconduct is so egregious that it is proper to determine in advance that the lawyer’s character and fitness cannot be rehabilitated, thereby foreclosing any possibility that the lawyer might seek readmission to the legal profession. The majority correctly cites one such example: In re Petal, 10-0080, p. 12 (La.3/26/10), 30 So.3d 728, 736, in which, after being suspended by this court, the lawyer nevertheless continued to practice law. This court explained that “[s]uch Rcallous disregard for the authority of this court constitutes indisputable evidence of a fundamental lack of moral character and fitness, warranting permanent disbarment.” Id. (internal quotes omitted). However, the instant misconduct, in my view, does not warrant determining in advance that the 61-year-old respondent should be forever prohibited from even the possibility of rehabilitating his character and fitness and rejoining the profession to which he was admitted in 1978.