State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Thomas G. Sundvold, respondent.
___ N.W.2d ___

Filed April 4, 2014.    No. S-13-002.

1. **Disciplinary Proceedings.** A proceeding to discipline an attorney is a trial de novo on the record.
2. **Disciplinary Proceedings: Appeal and Error.** In an attorney discipline case, the Nebraska Supreme Court reaches its conclusion independent of the findings of the referee. However, where the credible evidence is in conflict on a material issue of fact, the Nebraska Supreme Court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Disciplinary Proceedings: Proof.** Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence.
4. **Disciplinary Proceedings.** In attorney discipline cases, the basic issues are whether discipline should be imposed and, if so, the type of discipline under the circumstances.
5. ____. The Nebraska Supreme Court evaluates each attorney discipline case in light of its particular facts and circumstances and considers the attorney's acts both underlying the events of the case and throughout the proceeding.
6. ____. The goal of attorney disciplinary proceedings is not as much punishment as determination of whether it is in the public interest to allow an attorney to keep practicing law.
7. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
8. **Disciplinary Proceedings: Words and Phrases.** In the context of attorney discipline proceedings, misappropriation is an unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives personal gain therefrom.
9. **Disciplinary Proceedings.** Misappropriation of client funds is one of the most serious violations of duty an attorney owes to clients, the public, and the courts.
10. ____. Misappropriation by an attorney violates basic notions of honesty and endangers public confidence in the legal profession.
11. ____. Absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.
12. ____. The fact a client did not suffer any financial loss does not excuse an attorney's misappropriation of client funds and does not provide a reason for imposing a less severe sanction.

13. ____. The Nebraska Supreme Court does not view the misappropriation of funds from one's own firm as any less dishonest and deceptive than the misappropriation of client funds.

14. ____. In determining the appropriate discipline of an attorney, the Nebraska Supreme Court considers the discipline imposed in cases presenting similar circumstances.

15. ____. Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.

16. ____. In evaluating attorney discipline cases, the Nebraska Supreme Court considers aggravating and mitigating circumstances.

Original action. Judgment of suspension.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Clarence E. Mock, of Johnson & Mock, for respondent.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## NATURE OF CASE

The Counsel for Discipline of the Nebraska Supreme Court, relator, filed amended formal charges against Thomas G. Sundvold, respondent, alleging that he violated his oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 2012), and several of the Nebraska Rules of Professional Conduct. Respondent filed an answer admitting certain factual allegations but denying other certain factual allegations and denying that he violated the rules of professional conduct. This court appointed a referee. After holding an evidentiary hearing, the referee filed a report and determined that respondent had violated Neb. Ct. R. of Prof. Cond. §§ 3-501.1 (competence); 3-501.3 (diligence); 3-501.4(a) and (b) (communications); 3-501.15(a) and (c) (safekeeping property); and 3-508.4(a), (c), and (d) (misconduct); and his oath of office as an attorney. The referee recommended that respondent be suspended for a period of 3 years, followed by 2 years' monitored probation. Respondent filed exceptions to the referee's report regarding findings of fact and conclusions of law and the recommended discipline. In his brief to this court, respondent states that he

withdraws his exceptions to the referee's findings of fact and conclusions of law and takes exception only to the referee's recommended discipline. Relator agrees with the referee's recommended discipline. We determine that the proper sanction is suspension from the practice of law for a period of 3 years and, upon reinstatement, 2 years of probation, including monitoring.

## STATEMENT OF FACTS

Respondent was admitted to the practice of law in Nebraska in September 2003. At all relevant times, respondent was engaged in the private practice of law in Lincoln, Nebraska, under the jurisdiction of the Committee on Inquiry of the First Disciplinary District, which determined reasonable grounds existed to discipline respondent. Accordingly, formal charges were filed against respondent on January 3, 2013, and amended formal charges were filed on February 15.

The amended formal charges contained two counts against respondent. Count I generally alleged that respondent, while employed by a law firm, failed to properly represent a client, a roofing contractor, in a civil suit brought against the client; failed to deposit advance fees from the client in the law firm's trust account; and failed to turn over attorney fees received from the client to the law firm in accordance with an oral agreement with the law firm. Count II generally alleged that respondent failed to deliver payments that he received from three additional clients to the law firm in accordance with an oral agreement with the law firm.

Respondent filed his answer on March 15, 2013, in which he admitted certain factual allegations and denied other factual allegations and denied that he violated the rules of professional conduct. Given respondent's answer, this court appointed a referee on March 25.

On June 11, 2013, an evidentiary hearing was held before the referee. On September 10, the referee filed his report. The referee found facts substantially as described below. Following our review of the record, we determine there is clear and convincing evidence in the record to support these facts.

Respondent graduated from Creighton University School of Law in May 2002. During law school, respondent served as a member of the Creighton Law Review and worked as a law clerk for an Omaha law firm. As a law clerk, respondent's duties were confined to legal research and brief writing.

Respondent's first employer after law school was an insurance company, where he worked as a cargo claims attorney starting in May 2003. Respondent essentially worked as an insurance adjuster negotiating claims. He did not participate in any litigation, nor did he draft any pleadings.

In 2006, respondent accepted employment with a carrier company as an associate general counsel handling bodily injury claims. His duties primarily involved adjusting claims for bodily injury. While employed there, respondent was not involved in any courtroom litigation or the drafting of pleadings.

In August 2010, respondent left the carrier company to engage in the private practice of law. Up to that time, respondent did not have any experience in the financial aspects of the attorney-client relationship. He had never negotiated a fee, handled client funds, or drafted a contract for the provision of legal services, nor had he ever worked with a billing system or utilized a trust account.

In late September or early October 2010, respondent joined a law firm as an associate attorney. Respondent was an employee with the law firm as an associate attorney from October 2010 through December 12, 2011.

Respondent's compensation was based upon an oral agreement with the law firm. Respondent was to receive a percentage of the gross amount of fees paid by his clients to the law firm. Under this agreement, 60 percent of the gross amount was to go to respondent and 40 percent was to go to the law firm. Respondent was obligated to deliver to the law firm all fee payments received by him from his clients, with the exception that he was to be allowed to retain fees generated from relatives and close friends for certain legal work. In exchange, the law firm supplied respondent with an office, billing services, and some limited secretarial assistance. The

law firm also orally agreed to cover his expenses, including, but not limited to, bar dues, seminar fees, organization dues, and marketing expenses.

Although respondent was an associate at the law firm, he practiced independently, essentially sharing office space with no direct supervision by the law firm. Because respondent operated largely on his own under this agreement, the law firm did not provide him with formal training or oversight related to the handling of client funds or billing.

On or about February 7, 2011, respondent entered into a fee agreement with a client and the client's roofing company for representation of the client, a roofing contractor, in a civil action that had been filed against the client's company in the county court for Seward County. The suit involved a roofing contract between the plaintiff and the client's company for work to be done on the plaintiff's residence, and the plaintiff was seeking $7,291.16 in damages. The fee agreement between respondent and the client was for an hourly fee of $175, with a $1,000 advance fee payment required before representation would commence. Respondent received the $1,000 advance fee payment on or about February 7.

The advance fee payment received by respondent from the client should have been deposited in the law firm's trust account for the benefit of the client. Respondent did not deposit the advance fee payment into the law firm's trust account, nor did he inform the law firm that he had received the advance fee payment from the client. Respondent deposited the advance fee payment into his personal account.

On or about February 7, 2011, when respondent entered into the fee agreement with the client, respondent learned that a hearing had been set in the client's case for March 21 at 11 a.m., by which time the client was to have an answer filed. On March 21 at 11 a.m., the plaintiff's counsel appeared in court, but respondent did not appear on behalf of his client, and no answer had been filed. The court set the case for trial to be held on May 2. At 11:44 a.m. on March 21, respondent filed by fax to the court an answer on behalf of the client. A copy of the March 21 journal entry was sent to respondent informing him that the trial was set for May 2.

Between March 21 and April 25, 2011, respondent spoke with the client about the claim against the client, but respondent did not conduct any formal discovery. On April 25, respondent and the plaintiff's attorney had a telephone conversation regarding a continuance of the approaching May 2 trial date. Respondent and the plaintiff's counsel have different recollections about this conversation. The plaintiff's attorney testified by way of an affidavit which was received in evidence at the hearing before the referee. The plaintiff's attorney testified that respondent had stated that he was not ready for trial and that he intended to file a motion to continue the trial. The plaintiff's attorney testified in his affidavit that he informed respondent that the plaintiff would object to a continuance and that therefore, respondent should not state in his motion that the plaintiff's attorney had agreed to any requested continuance.

In contrast, respondent testified that the plaintiff's attorney did not have any objection to the proposed continuance but that he did not know at the time whether the plaintiff would consent to a continuance. Respondent testified that he understood that the plaintiff's attorney agreed to advise him before trial if an objection would be lodged against respondent's motion to continue. Respondent testified that based on this understanding, respondent informed his client that the trial was continued and that the client was excused from appearing on May 2.

On April 28, 2011, respondent filed a motion to continue the trial. Respondent did not verify that the trial had been continued; nevertheless, he informed his client that the client did not need to be in court on May 2. Respondent testified at the hearing before the referee that since he did not hear from the plaintiff's attorney before trial, he assumed the trial would be continued with a new date set by the court.

Respondent did not appear in court for the trial on May 2, 2011. Several attempts were made by court personnel to contact respondent on the morning of May 2, but those attempts were unsuccessful. On May 2, the court denied respondent's motion to continue the trial and the trial commenced. The plaintiff put on evidence and testified. The court then entered judgment in the full amount of the plaintiff's prayer of $7,291.16.

Notice of the judgment was mailed to respondent. Respondent did not send a copy of the judgment to his client, but respondent informed the client by telephone of the judgment that had been entered against him. On May 6, 2011, respondent filed a motion to set aside default judgment, and on May 9, a hearing on the motion was set for June 17.

On or about May 12, 2011, the client received a copy of the judgment from the court. The client called respondent, and respondent told the client that he was taking care of the matter. On May 17, the client sent a fee payment of $500 to respondent, and on June 13, the client sent another fee payment of $500 to respondent. Respondent did not deliver these payments to the law firm but instead kept the money. Respondent did not inform the law firm that he had received the payments.

A hearing was held on respondent's motion to set aside default judgment on June 17, 2011. The court determined that judgment was not by default but instead was entered after an evidentiary hearing. On June 20, the court entered a journal entry overruling respondent's motion, and the journal entry was mailed to respondent. Respondent did not inform his client that the motion was overruled, and he did not send a copy of the journal entry to the client.

On August 9, 2011, the plaintiff's attorney filed a motion for order in aid of execution, requesting that respondent's client be ordered to appear in court on September 9 to answer questions regarding the assets of the client's company. An order for a debtor's examination was issued, and the order was served on the client on August 19. Shortly after August 19, the client called respondent to ask about the September 9 debtor's examination. Respondent informed the client that he did not need to appear for the hearing.

Respondent did not appear in court on September 9, 2011, and he did not file an objection or other pleading on behalf of the client regarding the debtor's examination. Based on respondent's advice, the client did not appear in court for the debtor's examination. On September 9, the court made a journal entry regarding the client's failure to appear for the debtor's examination. The court issued an arrest warrant for

the client and set a cash bond of $1,000. A copy of the journal entry was mailed to respondent; however, respondent did not send a copy to the client and did not notify the client of the entry of the arrest warrant.

On October 5, 2011, the client was arrested in McCook, Nebraska, based on the warrant issued in Seward County. The client posted the $1,000 cash bond and was released. He was ordered to appear in court on October 14, and on that date, the client and respondent appeared in court for the debtor's examination. On October 18, respondent filed a motion to withdraw as counsel for the client, and the motion was granted the following day.

With respect to a second client, on or about January 21, 2011, respondent received a payment from the second client in the amount of $400. Respondent failed to deliver the payment to the law firm or to notify the law firm that he had received the payment. Respondent kept the $400.

On or about April 13, 2011, respondent received a payment from a third client in the amount of $500. Again, respondent failed to deliver the payment to the law firm or to inform the law firm that he had received the payment. Respondent kept the $500 payment.

During the time respondent was employed by the law firm, he represented a fourth client. Respondent received various payments from the fourth client, most of which respondent delivered to the law firm. However, on five occasions, respondent failed to deliver payments from the fourth client to the law firm or to notify the law firm that he had received the payments. The following payments totaling $1,170 were given to respondent by the fourth client but were not delivered to the law firm: a $300 payment on December 17, 2010; a $750 payment on April 29, 2011; a $40 payment on May 6; a $40 payment on May 31; and a $40 payment on July 25. Respondent kept the $1,170.

On December 14, 2011, relator received a letter from respondent addressed to "The Nebraska Bar Association . . . RE: Self Disclosure." The letter stated in part, "I [respondent] am writing in regards to a matter which I wanted to share with the Nebraska Bar Association to ensure proper self

disclosure has been made to the Bar Association and to ensure all proper steps were taken and accounted for." Respondent's letter addressed two of the allegations which were later contained in the amended formal charges. First, he disclosed his failure to deposit the advance fee from the roofing contractor client in the law firm's trust account and instead depositing the fee in his personal account. Second, respondent disclosed his reasons for not depositing the advance fee in the law firm's trust account. Respondent did not disclose that he failed to deliver the payments received from the three other clients as described above. He also did not disclose the facts and circumstances involving his representation of the roofing contractor client, which led to the judgment's being entered against the client and the client's arrest.

The referee determined that respondent made three false statements in his letter. First, the referee determined that respondent made false statements with regard to the law firm's failing to pay respondent certain out-of-pocket expenses, namely respondent's 2010 Nebraska and Iowa bar dues. Respondent did not join the law firm until October 2010, and at that time, his 2010 Nebraska and Iowa bar dues had been paid. Second, the referee determined that respondent made false statements in his letter regarding his relationship with the roofing contractor client. Respondent stated in his letter that since he was an acquaintance of the client, he was not required to deliver the fee to the law firm. The referee determined that respondent was not an acquaintance of the client and that this statement was accordingly false. Third, the referee determined that respondent made false statements regarding the fee arrangement he entered into with the roofing contractor client. In the letter, respondent stated that he had a flat fee agreement with the client, but he had actually agreed to represent the client on an hourly basis with an advance payment of $1,000.

Respondent testified at the hearing before the referee that the law firm had failed to pay his out-of-pocket expenses as promised under the oral agreement between respondent and the law firm. Respondent testified that he made repeated requests to the law firm to pay his out-of-pocket expenses

and that he also requested, and the law firm failed to provide him with, an accounting showing how fees paid to him were calculated. Respondent testified that in order to offset amounts owed to him by the law firm under the employment agreement, he retained client fees he received from December 2010 through July 2011.

The referee determined that respondent misappropriated $4,070 of client fees due the law firm over a 7-month period starting on or about December 17, 2010, and ending on or about July 25, 2011. The referee further determined that of the $4,070 of client fees respondent misappropriated from the law firm, he has paid the law firm $2,000, and that this payment was made to the law firm's trust account by respondent only after the roofing contractor client made a demand on him and the law firm for the $2,000 which had been paid to respondent. The referee also determined that respondent had misappropriated client fees due to the law firm at a point in time when the law firm did not owe him money for bar dues.

The referee determined that by his actions, respondent violated conduct rules §§ 3-501.1; 3-501.3; 3-501.4(a) and (b); 3-501.15(a) and (c); and 3-508.4(a), (c), and (d); and his oath of office as an attorney. The referee recommended that respondent be suspended for a period of 3 years, followed by 2 years' monitored probation.

On September 19, 2013, respondent filed exceptions to the referee's report regarding findings of fact and conclusions of law and the recommended discipline. Respondent stated in his brief to this court filed October 10, 2013, that he "withdraws exceptions 1-4 to the Referee's report" regarding the referee report's findings of fact and conclusions of law, but that he still takes exception to the referee's recommended discipline.

## ASSIGNMENTS OF ERROR

Having withdrawn his exceptions to the referee's findings of fact and conclusions of law, respondent generally states that he takes exception to the referee's recommended discipline. Respondent specifically states he takes exception to these discipline decisions and quotes from the referee's report: (1) "'The public needs to be protected from respondent engaging

in the conduct found herein to be in violation of Nebraska Court Rules of Professional Conduct and in violation of the Oath of Office found herein in the future,'" and (2) "'[t]he appropriate discipline is a 3 year suspension of respondent's license to practice law and that respondent be able to apply for reinstatement in accordance with the Nebraska Supreme Court Rules of Discipline, which application shall include a showing which demonstrates his fitness to practice law.'"

## STANDARDS OF REVIEW

[1,2] A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Tonderum*, 286 Neb. 942, 840 N.W.2d 487 (2013). We reach our conclusion independent of the findings of the referee. *State ex rel. Counsel for Dis. v. Ellis*, 283 Neb. 329, 808 N.W.2d 634 (2012). However, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

[3-5] Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence. *Ellis, supra.* In attorney discipline cases, the basic issues are whether discipline should be imposed and, if so, the type of discipline under the circumstances. *State ex rel. Counsel for Dis. v. Simon, ante* p. 78, 841 N.W.2d 199 (2013). We evaluate each attorney discipline case in light of its particular facts and circumstances and consider the attorney's acts both underlying the events of the case and throughout the proceeding. *Ellis, supra.*

In his report, the referee made findings of fact and determined that respondent violated his oath of office as an attorney as provided by § 7-104 and the following provisions of the Nebraska Rules of Professional Conduct: §§ 3-501.1; 3-501.3; 3-501.4(a) and (b); 3-501.15(a) and (c); and 3-508.4(a), (c), and (d). Upon our review of the record, we agree that there is clear and convincing evidence that

by his conduct, respondent violated his oath of office as an attorney and the provisions of the professional conduct rules set forth above. As stated above, in his brief before this court, respondent states that he withdraws his exceptions to the referee report's findings of fact and conclusions of law, and that he only takes exception to the referee's recommended discipline. Therefore, the only issue before us is the appropriate discipline.

[6,7] The goal of attorney disciplinary proceedings is not as much punishment as determination of whether it is in the public interest to allow an attorney to keep practicing law. *Ellis, supra*. Neb. Ct. R. § 3-304 provides:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure, and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Tonderum*, 286 Neb. 942, 840 N.W.2d 487 (2013).

[8-13] We have previously stated that in the context of attorney discipline proceedings, misappropriation is an unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives personal gain therefrom. *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 827 N.W.2d 214 (2013).

Misappropriation of client funds is one of the most serious violations of duty an attorney owes to clients, the public, and the courts. *Id*. Misappropriation by an attorney violates basic notions of honesty and endangers public confidence in the legal profession. *Id*. Absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds. *Id*. The fact a client did not suffer any financial loss does not excuse an attorney's misappropriation of client funds and does not provide a reason for imposing a less severe sanction. *Id*. We do not view the misappropriation of funds from one's own firm as any less dishonest and deceptive than the misappropriation of client funds. *State ex rel. Counsel for Dis. v. Achola*, 266 Neb 808, 669 N.W.2d 649 (2003).

[14] In determining the appropriate discipline of an attorney, we consider the discipline imposed in cases presenting similar circumstances. *Tonderum, supra*. In the referee's report, he relied on three cases from this court regarding an attorney's misappropriation of funds from a law firm: *State ex rel. Counsel for Dis. v. Frederiksen*, 262 Neb. 562, 635 N.W.2d 427 (2001); *Achola, supra*; and *State ex rel. Counsel for Dis. v. Young*, 285 Neb. 31, 824 N.W.2d 745 (2013).

In *Frederiksen*, the only alleged misconduct against Mark D. Frederiksen was the misappropriation of funds by him from a law firm of which he was a partner. Frederiksen apparently became dissatisfied with his compensation, and over a period of 3 years, he misappropriated approximately $15,000 in fees paid directly to him by his law firm's clients. We ordered that Frederiksen be suspended from the practice of law for a period of 3 years.

In *Achola*, like in *Frederiksen*, the only alleged misconduct against George B. Achola was the misappropriation of funds by him from a law firm of which he was an associate. Achola wrote unauthorized checks on his law firm's account totaling more than $20,000 for the payment of his personal expenses. In *Achola*, we stated that sufficient mitigating factors existed to support the decision not to disbar Achola, and we ordered that Achola be suspended from the practice of law for a period of 3 years.

In *Young*, formal charges were filed against David James Young alleging, inter alia, that Young had failed to deliver payments that he had received from a client to the law firm of which he was an associate totaling $1,500. Young filed a conditional admission, and we ordered that Young be suspended from the practice of law for a period of 20 months followed by 2 years' monitored probation upon reinstatement.

Respondent argues that *Frederiksen*, *Achola*, and *Young* are not completely relevant to the instant case, because it is not evident in those cases that the attorneys were misappropriating client funds as a self-help remedy to offset amounts owed to them by their respective law firms, as respondent asserts he was doing in this case. We do not find this argument to be persuasive. Respondent never informed the law firm that he had received the payments from the clients or that he intended to keep the payments as a means to offset the amount the law firm purportedly owed to him. Respondent was misappropriating the payments owed to the law firm and failed to inform the law firm that he was doing so. Respondent's conduct is similar to that of the attorneys in *Frederiksen*, *Achola*, and *Young*.

Respondent further contends that his failure to deposit the $1,000 advance fee payment from the roofing client into his law firm's trust account or the respondent's own trust account is an isolated incident of failure to deposit unearned fees into a client trust account. Respondent explains that his conduct was due to the fact that he did not have any previous experience handling advance fee payments. Accordingly, respondent asserts that he should receive a lesser sanction.

[15] While respondent's failure to deposit the advance fee payment received from the roofing client into a trust account is the only example in the record of respondent's misappropriating unearned advance fees, the record indicates several other instances where respondent misappropriated fee payments for services that he received from clients. Specifically, the record shows that respondent misappropriated clients' fees 10 times over a period of 7 months totaling $4,070. We have stated that cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying

more serious sanctions. *State ex rel. Counsel for Dis. v. Ellis*, 283 Neb. 942, 840 N.W.2d 487 (2013). Respondent admits that he failed to deliver these payments to the law firm and failed to notify the law firm that he had received these payments. Respondent further admits that he wrongfully resorted to "self-help" by failing to deliver the fees to the law firm, but he explained that his conduct was due to the fact that he believed the law firm owed him money based on their oral compensation agreement.

[16] We have stated that in evaluating attorney discipline cases, we consider aggravating and mitigating circumstances. *Ellis, supra*. In his report, the referee noted mitigating factors to be considered in determining respondent's sanction. The record contained no evidence that respondent was not in good standing with the Nebraska State Bar Association, and there are no prior disciplinary complaints or penalties against respondent. The record showed that respondent has accepted responsibility for what happened, and he cooperated throughout the course of the disciplinary proceedings. The record contains a letter of support from one attorney describing respondent's professionalism and high moral character. Respondent has contributed to the profession through his membership in various organizations, and he has been an active member in the community.

The referee also noted the following aggravating factors in his report. In his "Self Disclosure" letter, respondent disclosed that he deposited the advance fee from the roofing client in his personal account instead of in the law firm's trust account. However, respondent failed to disclose in his letter that he had failed to deposit payments he received from the second, third, and fourth clients and failed to notify the law firm that he had received these payments. He also failed to disclose the facts and circumstances of his representation of the roofing client which led to a judgment's being entered against the client. The referee stated that respondent's representation of the roofing client raises questions as to whether respondent is competent to practice law. The record indicates that the misappropriation of client funds was not an isolated incident and that over a period of 7 months, respondent misappropriated

clients' fees 10 different times totaling $4,070. Furthermore, the referee stated that although it is not clear from the record what the outcome of the roofing client's case would have been if respondent had properly represented the client, the client experienced a financial loss due to respondent's conduct, because he was required to post a $1,000 cash bond as a result of respondent's advising the client he did not have to appear at the debtor's examination. We consider the foregoing mitigating and aggravating factors in determining the sanction to be imposed.

Given the mishandling of his representation of the roofing client's case, his failure to deposit the advanced fee of $1,000 received from the roofing client into a trust account, and his misappropriation of client funds totaling $4,070, we consider respondent's conduct to be serious violations of the rules governing attorney conduct. We, therefore, order that respondent be suspended from the practice of law for a period of 3 years and, upon reinstatement, be subject to 2 years of probation, including monitoring. The monitoring shall be by an attorney licensed to practice law in the State of Nebraska, who shall be approved by the relator. The monitoring plan shall include, but not be limited to, the following: During the first 6 months of the probation, respondent will meet with and provide the monitor a weekly list of cases for which respondent is currently responsible, which list shall include the date the attorney-client relationship began; the general type of case; the date of last contact with the client; the last type and date of work completed on the file (pleading, correspondence, document preparation, discovery, or court hearing); the next type of work and date that work should be completed on the case; any applicable statutes of limitations and their dates; and the financial terms of the relationship (hourly, contingency, et cetera). After the first 6 months through the end of probation, respondent shall meet with the monitor on a monthly basis and provide the monitor with a list containing the same information as set forth above; respondent shall reconcile his trust account within 10 days of receipt of the monthly bank statement and provide the monitor with a copy within 5 days; and respondent shall submit a quarterly compliance report with

the Counsel for Discipline, demonstrating that respondent is adhering to the foregoing terms of probation. The quarterly report shall include a certification by the monitor that the monitor has reviewed the report and that respondent continues to abide by the terms of the probation.

## CONCLUSION

We find that respondent should be and hereby is suspended from the practice of law for a period of 3 years. Should respondent apply for reinstatement, his reinstatement shall be conditioned upon respondent's being on probation for a period of 2 years, including monitoring following reinstatement, subject to the terms of probation outlined above. Respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF SUSPENSION.

---

WILLIAM D. COFFEY, APPELLANT, V.
PLANET GROUP, INC., APPELLEE.
___ N.W.2d ___

Filed April 4, 2014.    No. S-13-194.

1.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
2.  ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
3.  **Statutes: Judgments: Appeal and Error.** The interpretation of statutes and regulations presents questions of law. An appellate court independently reviews questions of law decided by a lower court.
4.  **Statutes: Appeal and Error.** Absent a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning.