ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
■JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, David Jack Dowell, an attorney licensed to practice law in Louisiana but currently ineligible to practice.
UNDERLYING FACTS
In July or August 2001, Stacey Dagsaan Stratton hired respondent to handle her father’s succession. At the time, respondent was employed by the law firm of Windhorst, Gaudry, Ranson, Higgins & Gremillion (“Windhorst”). Despite his *995 full-time employment with Windhorst, respondent handled the succession as a private practice matter without Windhorst’s knowledge or consent and despite Win-dhorst’s policy of not allowing full-time attorneys to have a private practice. Respondent also advised Ms. Stratton he would be working on the succession as a Windhorst matter.
Ms. Stratton paid respondent a total of $2,000 as a retainer to handle the succession. Respondent instructed her to make the checks payable to himself even though he was supposed to be working on the matter on behalf of Windhorst. Thereafter, he failed to turn the $2,000 retainer over to Windhorst despite recording his work on Windhorst’s time sheets, which indicated his time was billable on an hourly basis to Ms. Stratton. At some point, Ms. Stratton also delivered to respondent a tax refund check made payable to the decedent in the approximate amount of $290.
| Jn November 2001, respondent left his employment with Windhorst. Despite informing Ms. Stratton that he would continue to work on the succession, he failed to diligently pursue the matter and thereafter failed to communicate with Ms. Stratton. When he did communicate with her, he informed her that he had filed the succession when, in fact, he had not.
In January 2002, Windhorst sent Ms. Stratton a bill in the amount of $1,965 for work done by respondent on the succession despite the fact that Ms. Stratton had already paid for this work with the $2,000 retainer provided to respondent.
Respondent terminated his attorney-client relationship with Ms. Stratton in October 2002. At that time, respondent returned some of Ms. Stratton’s file materials. However, he failed to return the tax refund check. He also failed to account for the $2,000 retainer and the tax refund check. Thereafter, Ms. Stratton contacted Windhorst to complete the succession.
In October 2002, Daniel Ranson, a partner at Windhorst, filed a complaint against respondent with the ODC. Despite receiving notice of the complaint, respondent failed to answer, necessitating the issuance of a subpoena by the ODC to obtain his sworn statement. During the sworn statement, respondent falsely informed the ODC that he had recorded the time he worked on the succession while employed by Windhorst as non-billable work.
DISCIPLINARY PROCEEDINGS

Formal Charges

On January 21, 2005, the ODC filed two counts of formal charges against respondent, alleging that his conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.16(d) (obligations upon termination of the | ..¡representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer),[1] and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent answered the formal charges, essentially denying the allegations of misconduct.

*996
Formal Hearing

This matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee on June 17, 2005. The ODC introduced documentary evidence and called Mr. Ranson and Ms. Stratton to testify before the committee. Respondent did not participate in the hearing, instead indicating that he intended to “submit this matter on the records and the pleadings avoiding the need for a formal hearing.” He also indicated that he did not intend to call any witnesses in the matter.

Hearing Committee Recommendation

After considering this matter, the hearing committee made factual findings as follows:
In or around August 2001, respondent handled a succession for Ms. Stratton as a private practice matter without Win-dhorst’s knowledge or consent despite working full-time for Windhorst. No full-time employees at Windhorst were allowed to conduct a private practice while in the firm’s employ. Ms. Stratton reasonably believed respondent was working on the succession as a Windhorst matter. Ms. |4Stratton paid $2,000 directly to respondent while he was employed with Win-dhorst. Respondent recorded some, if not most, of his work on the succession on his Windhorst time sheets and assigned the time to a billable account, not a non-billable account as he testified in his sworn statement. Although he recorded the time as billable, respondent failed to obtain Windhorst’s approval to take the case and failed to initiate a Windhorst invoice. Instead, he received payment for his work directly from Ms. Stratton, did not disclose receipt of the funds to Windhorst, and converted the funds to his own use.
At some point thereafter, respondent stopped communicating with Ms. Stratton and refused to account for his work and fees. He also failed to do any work on the succession, falsely informed his client that he had filed the succession pleadings, failed to provide her with status updates, and failed to deliver file materials. After ignoring multiple requests for the return of the file, respondent left a portion of the file on Ms. Stratton’s doorstep. He withheld pleadings and research materials he had produced and failed to return the tax refund check to Ms. Stratton despite written requests from Mr. Ranson to return same.
After respondent’s unbilled time was discovered by Windhorst, invoices were sent to Ms. Stratton. Additionally, Win-dhorst advised Ms. Stratton that respondent had left the firm and inquired whether she wanted Windhorst to continue to represent her in the succession. Win-dhorst did not know that respondent had received payment directly from Ms. Strat-ton until she contacted Mr. Ranson in response to receiving the invoice. Thereafter, respondent advised Ms. Stratton not to contact Windhorst and not to meet with anyone at Windhorst. Respondent also apparently advised Ms. Stratton not to provide Windhorst with the cancelled checks of her payments to respondent. Windhorst then recorded a lien against the decedent’s estate for the fees |sdue but cancelled same once it learned of the true circumstances. Thereafter, Windhorst completed the succession for no additional fee.
Respondent failed to respond to Mr. Ranson’s request for an accounting and the return of Ms. Stratton’s file. He also failed to respond to a request to reimburse Ms. Stratton $800 in losses resulting from his failure to finalize the succession. Furthermore, respondent failed to file the succession pleadings even though he told Ms. Stratton he had. Consequently, Ms. Strat- *997 ton’s attempts to obtain confirmation of the filings were unsuccessful.
By letters dated November 19, 2002 and December 11, 2002, the ODC informed respondent of Mr. Ranson’s complaint against him. Respondent did not respond, and the ODC was required to issue a subpoena to obtain his sworn statement. In his sworn statement, respondent gave no explanation for his failure to respond other than to state that he would rather give his response in person. There is also no evidence that respondent responded to the ODC’s July 7, 2004 letter regarding possible resolution before the filing of formal charges. Nor is there evidence that he responded to the ODC’s November 19, 2004 letter regarding consent discipline even though he previously expressed an interest in same.
Based on these factual findings, the committee determined that respondent violated Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(c), 8.4(b), and 8.4(c) of the Rules of Professional Conduct. The committee also determined that respondent knowingly and intentionally violated duties owed to his client, the public, and as a professional. His actions caused harm to his client and to Windhorst and created the potential for additional harm to Ms. Stratton. Relying upon the ABA’s Standards for Imposing Laujyer Sanctions, the committee determined that the baseline sanction is disbarment.
The committee found the following aggravating factors present: dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally | (¡failing to comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1994), and indifference to making restitution. The only mitigating factor found by the committee is the absence of a prior disciplinary record.
Under these circumstances, the committee recommended that respondent be disbarred. The committee also recommended that respondent reimburse the decedent’s estate for the tax refund check, reimburse Ms. Stratton for the $800 in additional expenses she incurred as a result of respondent’s misconduct, and reimburse Windhorst for the $2,000 in fees he received for the firm’s work on the succession. Finally, the committee recommended that respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous with the following modifications: (1) the testimony and evidence presented at the hearing indicated that respondent did perform some work on the succession, and (2) Ms. Stratton’s losses resulting from respondent’s failure to finalize the succession totaled $400, not $800.
The board adopted the committee’s “sanction analysis” and recommended that respondent be disbarred. The board also recommended that respondent make restitution to the decedent’s estate for the tax refund check and make restitution to Win-dhorst in the amount of $2,000 for the fees received relative to the succession. |7However, the board determined that requiring respondent to reimburse Ms. Stratton for the $400 “would appear to fall outside of the scope of Louisiana Supreme Court XIX.” Finally, the board recommended that respondent be assessed with *998 all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the conclusion that respondent neglected the succession he was hired to handle for Ms. Stratton, failed to communicate with his client, misappropriated the fees due to Windhorst, misappropriated the tax refund check belonging to the decedent’s estate, failed to provide Ms. Stratton with a complete copy of her file upon termination of the representation, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failed to cooperate with the ODC in its investigation. This conduct falls far below the high ethical standard expected of attorneys licensed to practice law in this state.
|sHaving found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s professional violations involve misappropriation of funds belonging to his law firm and client, misrepresentations to his law firm and client, neglect of a legal matter and failure to cooperate with the ODC. Our jurisprudence indicates the appropriate sanction for such misconduct ranges from disbarment to a lengthy suspension. See In re: Arbour, 05-1189 (La.11/29/05), 915 So.2d 345 (attorney suspended for two years for, among other things, neglecting a succession matter, mismanaging succession funds, failing to provide an accounting and information to other attorneys involved in the matter, and failing to cooperate with the ODC); In re: Collinsworth, 01-1628 (La.9/21/01), 795 So.2d 312 (attorney disbarred for depriving clients, third parties, and a former employer of money for a substantial period of time, showing little concern for the welfare of clients or colleagues, failing to cooperate in a disciplinary investigation, and failing to make or attempt to make restitution to his victims); and In re: Kelly, 98-0368 (La.6/5/98), 713 So.2d 458 (attorney suspended for three years for converting funds belonging to his law firm, with numerous mitigating factors present).
Numerous aggravating factors are present in this case: dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally failing [ 9to comply with the rules or orders of the disciplinary agency, submission of false *999 evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law and indifference to making restitution. The sole mitigating factor is respondent’s lack of a prior disciplinary record.
Considering the facts of the case as a whole, with particular emphasis on respondent’s dishonesty both toward his client and his law firm, we conclude disbarment is the appropriate sanction. Accordingly, we will disbar respondent and order him to make restitution to the decedent’s estate for the tax refund check and to make restitution to Windhorst for the $2,000 fee.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that David Jack Do-well, Louisiana Bar Roll number 23041, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution to the law firm of Windhorst, Gaudry, Ranson, Higgins, & Gremillion in the amount of $2,000 and make restitution to the estate of Teófilo Dagsaan for the tax refund check in the approximate amount of $290. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., would suspend for three years.

. At the formal hearing, the ODC indicated that a violation of Rule 8.4(b) should have been alleged in the formal charges with respect to the allegation that respondent failed to deliver the $2,000 fee to Windhorst. However, due to a clerical error, a violation of Rule 8.4(c) was alleged instead. The ODC orally requested that the hearing committee consider Rule 8.4(b) instead of Rule 8.4(c) with respect to this allegation.