PER CURIAM.
|, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Patrick Henry, an attorney .licensed to practice law in Louisiana.
As originally filed, the formal charges consisted of two counts; however, the ODC withdrew one count of misconduct during the formal hearing. Accordingly, this opinion does not address Count II, and simply refers to the disciplinary proceeding as if it had. .always consisted of a single count of formal charges.
UNDERLYING FACTS
In February 2008, respondent accepted employment as an associate with the Baton Rouge law firm of Shockey and Associates. At the time of his hiring, respondent was advised that his professional services would be billed at the rate of two hundred dollars per hour. The agreement further provided that respondent would be paid at the rate of sixty-five dollars per hour for each =hour of billable time that he produced for the firm, and that he would receive twenty-five percent of all net fees collected on cases which he personally brought- to the firm.
In November 2008, respondent agreed to represent a personal friend, 'Kevin Hambrice, in a child custody dispute with his former spouse pending in the 19th Judicial District Court in Baton Rouge. According to Mr. Hambrice, respondent agreed to handle the case with the expectation of the future referral [1] of Mr. | gHambrice’s business associates who may need legal services. To offset a substantial part of the work obligations associated with the representation, Mr. Hambriée’s wife, who is a trained paralegal, agreed to perform the clerical work required in the case.
Simultaneously, . respondent informed William Shockey that he agreed to represent Mr. Hambrice and that Mr Hambrice had agreed to pay the firm’s standard hourly rate. Respondent immediately began to submit hourly, billings to the firm. Respondent was paid every two weeks based on the submitted .billings. -
Difficulties arose after the firm’s bookkeeper submitted an hourly billing invoice to Mr. Hambrice on December 16, 2008. The following day, Mr. Hambrice e-mailed respondent and questioned why he was receiving a bill. In response, respondent advised Mr. Hambrice to simply disregard the- invoice. Respondent promised to ■“clear the matter up” with Mr. Shockey, but he never did.
After Mr. Hambrice received a second invoice in early January 2009, his wife emailed respondent, asking whether he had “cleared- the matter up.” Again, respondent reassured her that it was a clerical mistake and that he would make certain no further invoices were sent to them. Throughout this time, respondent continued to submit hourly billings to the firm and was paid for his time.
In January 2009, Mr. Shockey terminated respondent’s employment for reasons unrelated to the Hambrice case. Respondent took the Hambrice file with him when he left the firm. Thereafter, Mr. Shockey called respondent and advised him that Mr. Hambrice had refused to pay his bill. Respondent continued to reassure Mr. Shockey that Mr. Hambrice had freely agreed to be billed on an hourly basis. Mr. Shockey then filed suit against Mr. Hambrice to collect the unpaid fee. After filing the collection suit, Mr. Shockey learned from Mr. Hambrice’s attorney about respondent’s agreement to handle the child custody case pro bono. Mr. Shockey was compelled to dismiss his suit *564 after Mr. Hambrice ¡.«¡produced an e-mail exchange between the parties confirming the- specifics of the agreement.
DISCIPLINARY PROCEEDINGS
In March 2015, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee in September 2015.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings consistent with the underlying facts described above. The committee also made the following findings:
Respondent entered into an agreement with Mr. Hambrice to represent him in a domestic matter while respondent was employed at the Shockey Law Firm. Respondent was aware of the general hourly fee charged by the firm, but he did not communicate to the firm that he would be doing the work pro bono or request that the firm charge a lesser fee. Respondent submitted billable hours for his work on the matter and was paid at his customary and agreed upon rate by the . firm. Respondent never submitted a contract signed by Mr. Hambrice to the firm as per the requirements of his employment agreement.
Prior to 2009, respondent did not communicate to the firm any requests for deferred billing or any other variations of- the billing arrangements for the representation. Respondent did not advise Mr. Hambrice that he had not | communicated to Mr. Shockey a request for deferred billing or any variations of the billing arrangements, prior to Mr. Hambrice receiving a bill from the firm. E-mails from Mr. Hambrice indicate he believed respondent was doing work on the case pro bono. Emails from respondent did not clarify that he was not doing the work pro bono but indicated that Mr. Hambrice ■ would not receive any more bills.
Based on conversations with respondent, the firm filed suit against Mr. Hambrice to collect outstanding attorney’s fees. The firm dismissed the suit after being presented with e-mails that Mr.- Shockey believed indicated that ■ respondent had agreed to. provide services to Mr. Ham-brice on a pro bono basis. Respondent subsequently reimbursed the firm for the attorney’s fees owed by'the Hambrices. Although respondent indicated that he would seek an assignment of the firm’s rights against Mr. Hambrice, no assignment was requested or made.
In September 2009, respondent entered into a settlement agreement with the Hambrices to settle any outstanding claims regarding respondent’s representation of Mr. Hambrice in the domestic matter. The. settlement included a. provision requiring the Hambrees to acknowledge that they will not
,.. initiate[ ] or otherwise institute[ ], either directly, or through the action of another, any ethical complaint, investigation and/or proceeding with the Louisiana Bar Association’s Office of Disciplinary Counsel, and/or any other agency, court, tribunal, administrative body or organization in any way pertaining to or involving.HENRY and/or THE HENRY FIRM.
- Respondent was mentally impaired during this time due to his use of alcohol. On *565 November 17, 2013, he signed , a five-year recovery agreement with the Judges, and Lawyers Assistance Program (“JLAP”). He has sought assistance from Alcoholics Anonymous and substance abuse counseling for his addiction.
Based on these factual findings, the committee determined respondent violated the Rules of Professional Conduct as-alleged in the formal charges. | .^Specifically, the committee found clear and convincing evidence that respondent faded to adequately advise Mr. Hambrice of the financial arrangements that had or had not been made with the Shockey law firm. The committee further found that respondent misrepresented to the Shockey law firm the arrangement that he had made with Mr. Hambrice. The committee believed that respondent’s failure to communicate the fee arrangements to Mr. Ham-brice and to the Shockey law firm and his failure to adequately correct misunderstandings or misleading statements made by him to both parties involved misrepresentation or deceit, in violation of Rules 8.4(a) and 8.4(c).
The committee determined respondent’s actions were knowingly made and that he acted negligently due to his mental and emotional state. Based on the testimony of respondent, Mr. Shockey, and other witnesses, the committee' determined respondent did not act out of a selfish or dishonest motive. His actions were potentially harmful to his client and to his former employer.- Respondent caused a temporary loss of funds to the firm, but he made full restitution to Mr. Shockey. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction is suspension.
In mitigation, the committee found the absence of . a prior disciplinary record and personal or emotional problems. The committee declined to find any aggravating factors.
Based on these findings, the committee recommended respondent be suspended from the practice of law for six months, fully deferred with conditions.[1]
The ODC objected to the leniency of the sanction recommended by the committee.

|rDisciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. Based on these findings, the board determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board determined respondent violated duties owed to his client, the legal system, and the legal profession.. He knowingly misrepresented himself to his client and to his employer. While his misconduct did not lead to a loss of funds to his clients or to the public, there was actual harm to Mr. Shockey, who was unable to timely or without additional expense collect client fees due to the firm. In addition, Mr. Hambrice was forced to defend himself from the collection suit filed by Mr. Shockey. Although full restitution was made and Mr. Shockey voluntarily dismissed the suit he instituted in order to recoup his fees, the litigation would not have .been necessary but for respondent’s actions. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is suspension.
*566 In aggravation, the board found substantial experience in the practice of law (admitted 1992) and bad faith obstruction of the disciplinary proceedings.[2] In mitigation, the board found the absence of a prior disciplinary record, personal or emotional problems, good character or reputation, and timely good faith effort to make restitution or to rectify the consequences of the misconduct.[3]
After further considering respondent’s misconduct in light of this court’s prior jurisprudence addressing similar misconduct,, the board recommended he be 17suspended from the practice of law for nine months, with all but sixty (jays deferred, subject to a period of unsupervised probation to run .concurrently with his current JLAP contract ending on November 17, 2018. The board also recommended that respondent’s probation be conditioned on full compliance with the terms of his JLAP contract and his refraining from and engaging in further violations of the Rules of Professional Conduct, ther recommended respondent be assessed with the costs and expenses of this proceeding. The board fur-
Neither respondent nor thé OÍ)C filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction • of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether,the alleged misconduct has been proven by clear and convinc-tag evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we aré not bound in any way by the'findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In the instant matter, respondent agreed to handle a matter for his friend, Mr. Hambrice, on a pro bono basis and then failed to advise his employer about this agreement so he could submit billable hours for his work. Due to respondent’s misrepresentations and instructions, Mr. Hatabrice disregarded the firm’s billing invoices. ' As a result, the firm had to file suit against Mr. Hambrice to collect outstanding attorney’s fees. Although the suit was dropped and respondent' paid full restitution to his employer, respondent maintained his deception for several This misconduct amounts to a violation of the Rules of Professional Conduct as alleged in the formal charges. | Rmonths.
Having found evidence of professional misconduct, we now turn to a determination, of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved *567 considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent knowingly violated duties owed to his client, the legal system, and the legal profession, causing actual harm. The applicable baseline sanction in this matter is suspension. The following aggravating factors are present: substantial experience in the practice of law and bad faith obstruction of the disciplinary proceedings. The following mitigating factors are present: the absence of a prior disciplinary record, personal or emotional problems; good character or reputation; and timely good faith effort to make restitution or to rectify the consequences of the misconduct.
Turning to the issue of an appropriate sanction, the board cited three cases in which this court has imposed either a lengthy suspension or disbarment upon attorneys who intentionally converted funds belonging to their law firms. See In re: Sharp, 09-0207 (La.6/26/09), 16 So.3d 343 (disbarment imposed for conversion of $50,000 in settlement funds belonging to the lawyer’s law firm); In re: Bernstein, 07-1049 (La.10/16/07), 966 So.2d 537 (disbarment imposed for lawyer’s creation of “off the books” billing statements and collection of $30,000 in fees from clients which he then converted to hfe own use); and In re: Kelly, 98-0368 (La.6/5/98), 713 So.2d 458 (three-year suspension imposed for conversion of $80,000 in funds belonging to the lawyer’s law firm). The board also cited the case of In re: Lawrence, 04-0019 (La.10/19/04), 884 So.2d 561. In Lawrence, an attorney was assigned to handle a personal injury matter which his firm agreed to handle on a contingent fee basis. Over an eleven-month period, Lawrence" billed his time against the file with hours he did not actually work. Since the bills were not paid by the client, Lawrence did not believe there was any real harm done. We rejected this consideration and imposed a three-month suspension.
The board concluded that respondent’s conduct falls in the middle of the spectrum of misconduct involving unethical billing practices as outlined in the cases above. Respondent’s miscommunication or failure to communicate honestly with both-his client and his employer did result in a short-term personal financial gain, in that his employer paid him for the hours worked on the file. Respondent rectified this by paying full restitution to his employer. Respondent’s client was not financially harmed, although the client did have to' respond to the collection suit filed by Mr. Shockey to collect his outstanding attorney’s fees.
■ Considering the prior jurisprudence cited by the board, and after further considering the aggravating and mitigating factors present, we cannot'say that a short period of suspension, cohpled with probation and JLAP supervision, is unreasonable. To the extent that substance abuse may be related to the misconduct, the recommended sanction will encourage respondent to remain committed to recovery and protect the public by providing a mechanism to remove him from practice if he relapses into substance abuse -in the future.
Accordingly, we will adopt the board’s recommendation and suspend respondent from the practice of law for nine months, with all but sixty days deferred, followed by a period of unsupervised probation to run concurrently with respondent’s JLAP contract.
hnDECREE,
Upon review of the findings and recommendations of the hearing committee and *568 disciplinary board, and considering the record, it is ordered that Patrick E. Henry, Louisiana Bar Roll number 21695, be and he hereby is suspended from the practice of law for nine months. It is further ordered that all but sixty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period to run concurrently with his recovery agreement with the Judges and Lawyers Assistance Program. His probation shall be conditioned on full compliance with the terms of his JLAP agreement. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The committee recommended respondent (1) be placed on probation for a. period of three years or until he completes the JLAP program, and (2) that he continue to attend Alcoholics Anonymous during the probationary period.

. This factor relates to the settlement'agreement between respondent and the Hambrices and the provision which stipulates that no disciplinary action be pursued against respondent.

. The board determined that the record does not support a finding that alcoholism caused the misconduct as required under the ABA Standards, and thus declined to find chemical dependency as a mitigating factor.